No. 13453

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

IN THE MATTER OF ZIP GEARY,
A Youth

---

Appeal from:  District Court of the Tenth Judicial District,
              Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

    For Appellant:

        K. Robert Foster argued, Lewistown, Montana

    For Respondent:

        Hon. Michael Greely, Attorney General, Helena, Montana
        J. Mayo Ashley argued, Assistant Attorney General,
         Helena, Montana
        William A. Spoja, County Attorney, Lewistown, Montana
        Timothy J. O'Hare argued, Deputy County Attorney,
         Lewistown, Montana

---

                                Submitted:  March 14, 1977

                                  Decided: APR -6 1977

Filed: APR -6 1977

*Thomas J. Kearney*
                              Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This appeal arises from a dispositional hearing in the youth court, tenth judicial district, County of Fergus, conducted without a record. The facts leading up to the dispositional hearing were as follows:

Prior to September 22, 1975, Zip Geary was apprehended with another youth while they were removing the lug nuts from an automobile on a Lewistown car lot. As a result of this offense Zip Geary and his father, appellant, entered into an informal consent adjustment, without petition, placing Zip Geary on probation with the youth division for one year.

On February 6, 1976, Zip and another youth committed felony-theft of an automobile and felony-burglary of the Lewistown Eagles Club. On February 13, 1976, the deputy county attorney for Fergus County filed a petition in youth court charging Zip Geary with theft and burglary. On February 25, 1976, a hearing was held, wherein Zip admitted the allegations in the petition. A social study was prepared and submitted to the court on May 17, 1976. A dispositional hearing was held without a record on June 7, 1976, wherein the court ordered that Zip be placed in a foster home.

The father appeals from that order and raises two issues for our review.

1) Whether the absence of a stenographic record requires this case to be reversed and remanded to the district court?

2) Whether the district court must make a finding of parental unfitness before the youth is placed in the custody of a foster home?

A reading of the applicable statutes is determinative of the first issue. It is clear that there is a statutory mandate to record the dispositional hearing verbatim, and the

absence of such requires this case to be reversed and remanded

to the youth court. Section 10-1221(4), R.C.M. 1947, states:

> "The dispositional hearing shall be conducted
> in the manner set forth in section 10-1220,
> subsections (3), (4), and (5). The court shall
> hear all evidence relevant to a proper disposi-
> tion of the case best serving the interests of
> the youth and the public. Such evidence shall
> include, but not be limited to, the social
> summary and predisposition report provided for
> in subsection (2) of this section." (Emphasis
> supplied.)

Section 10-1220(3) in turn states:

> "An adjudicatory hearing shall be recorded
> verbatim by whatever means the court deems
> appropriate." (Emphasis supplied.)

Furthermore, this statutory requirement of a stenographic

record is neither a constitutional nor a statutory right of any

party, capable of being waived, as contended by the State. Nor is

the youth court given discretion to waive this statutory require-

ment. This is a legislative requirement imposed upon the youth

court to insure an orderly judicial process and preserve the

integrity of that process. If the legislature had intended

that a stenographic record need not be kept in each youth court

disposition hearing, the following language of Section 24(c),

Uniform Juvenile Court Act (1968), could have been used:

> "If requested by a party or ordered by the
> court the proceedings shall be recorded by
> stenographic notes or by electronic, mechan-
> ical, or other appropriate means. If not so
> recorded full minutes of the proceedings shall
> be kept by the court."

This requirement of a stenographic record is complimen-

tary to the right of appeal in all youth court actions given by

section 10-1225(1), as follows:

> "Any party other than the state may appeal from
> a judgment of the court to the supreme court
> in the manner provided by law. The appeal shall
> be heard by the supreme court upon the files,
> records, and transcript of the evidence of the
> juvenile court." (Emphasis supplied.)

Without a transcript, this Court is placed in the position of attempting to reconstruct a record on appeal. Such a task being often impossible and unnecessary, the right to appeal becomes illusory, a right without substance.

This discussion is applicable to the second issue. The absence in the record of any findings or reasoning for the youth court's disposition order would require this Court to speculate on the reasons for the order.

We are cognizant of the fact that section 10-1221, R.C.M. 1947, places no specific duty upon the youth court to render its findings on all issues as required under section 10-1220, R.C.M. 1947. However, the parties do have a right to appeal from dispositional hearings, as well as from adjudication hearings. Section 10-1225, R.C.M. 1947. Therefore, specific findings shall be made by the youth court in all disposition cases which will set forth the basis of its order. As stated in the Report of the Advisory Committee to the Administrator on Standards for the Administration of Juvenile Justice, p. 169 (1976):

> "The recommendation that the judge explain the terms of the disposition and the facts and reasons on which the disposition is based follows the lead to the National Advisory Commission on Criminal Justice Standards and Goals, supra; the ABA, Standards Relating to Sentencing Procedures and Alternatives, supra; as well as the standards adopted by the IJA/ABA Joint Commission and the Standards and Goals Task Force on Juvenile Justice. It is anticipated that articulation of the reasons underlying the choice of disposition will not only avoid misunderstandings of the terms imposed, but also will help to improve dispositional decision-making through the development of written dispositional and correctional policy and by providing a basis for appellate review. To assist the respondent in understanding the disposition imposed, the judge should indicate the more severe and less severe alternatives, if any, that were rejected."

However, we do not agree with appellant's contention that these findings must show parental unfitness in order to place a delinquent youth in a foster home. The cases cited by appellant

- 4 -

discuss "dependent" and "neglected" children, not delinquent youths.

The dispositional hearing held pursuant to section 10-1221, R.C.M. 1947, concerns two types of youths: "delinquent youths" and "youths in need of supervision". The latter may present the issue of parental unfitness, since one definition of a youth in need of supervision, section 10-1203(13), R.C.M. 1947, states:

> "'Youth in need of supervision' means a youth who commits an offense prohibited by law which, if committed by an adult, would not constitute a criminal offense, including but not limited to a youth who:
>
> " * * *
>
> "(b) habitually disobeys the reasonable and lawful demands of his parents or guardian, or is ungovernable and beyond their control * * *."

However, when the youth court is concerned with a delinquent youth, as in the present case, parental unfitness is not necessarily at issue. The fact that he has been adjudged a delinquent youth, as defined in section 10-1203(12), R.C.M. 1947, usually demonstrates the need for stronger and wiser authority than has been exercised by the parents, regardless of whether they have been adjudged to be unfit or not. This is not to say that the youth court possesses unlimited discretion at the disposition stage as feared by appellant. Section 10-1202, R.C.M. 1947, states:

> "The Montana Youth Court Act shall be interpreted and construed to effectuate the following express legislative purposes:
>
> "(1) to preserve the unity and welfare of the family whenever possible, and to provide for the care, protection and wholesome mental and physical development of a youth coming within the provisions of the Montana Youth Court Act;
>
> "(2) to remove from youth committing violations of the law the element of retribution and to substitute therefor a program of supervision, care and rehabilitation;
>
> "(3) to achieve the purposes of (1) and (2) of

this section in a family environment whenever possible, separating the youth from his parents only when necessary for the welfare of the youth or for the safety and protection of the community;

"(4) to provide judicial procedures in which the parties are assured a fair hearing and recognition and enforcement of their constitutional and statutory rights."

Subsection (3) sets forth specific criteria to be applied when the youth court is considering separating the youth from his parents.

Subsection (2) of section 10-1202 also expresses that this Act is concerned with the supervision, care, and rehabilitation of the youth. At the dispositional stage the concern for the youth's welfare and the safety and protection of the community are paramount and not secondary to the interests of the parents. For these reasons, we hold that the fitness of the parents did not require specific attention in the findings of the youth court.

For the foregoing reasons this case is reversed and remanded to the youth court to conduct a dispositional hearing in accordance with this decision.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 6 -