[Crim. No. 19946. Apr. 19, 1978.]

In re JOHN H., a Person Coming Under the Juvenile Court Law.
CLARENCE E. CABELL, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
JOHN H., Defendant and Appellant.

**COUNSEL**

Walter Lawrence Johnson, under appointment by the Court of Appeal, Paul Halvonik, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, and Edward H. Schulman, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHARDSON, J.**—John H., a minor, appeals from an order of the superior court declaring him to be a ward of the juvenile court and committing him to the Youth Authority. Among other contentions, appellant asserts that the superior court erred in failing to make and enter express findings which indicate the reasons for the order of commitment. We will conclude that, since neither the Constitution nor statutes require such findings, and since the record in such cases ordinarily is sufficient to permit adequate appellate review, we should not impose such an obligation as a judicial rule of procedure.

Appellant was found to have committed a robbery and to have inflicted great bodily harm upon the victim; he was adjudicated a ward of the juvenile court under Welfare and Institutions Code section 602 (all further statutory references are to that code unless otherwise specified); and a disposition hearing was held to determine a suitable placement (§§ 727-731). Appellant's probation officer recommended that appellant be sent to a county-maintained camp for delinquent youths. The referee disagreed, stating, on the record, that "this minor has and had for sometime been involved seriously and actively in gang activities. He was given a home on probation . . . and ordered to stay away from those gang activities. [¶] This is not the first serious offense involving violence in which he has been involved, and with this extensive history, the court . . . finds that the mental and physical condition . . . of the ward is such as to render it probable that he will be benefited by . . . treatment provided by [the Youth Authority]." (See § 734, requiring such a determination of probable benefit from a Youth Authority commitment; see also *In re Aline D.* (1975) 14 Cal.3d 557 [121 Cal.Rptr. 816, 536 P.2d 65].)

Because it would result in removing appellant from his home the referee's order was not effective until approved by a juvenile court judge. (§ 249 (former § 555); see *In re Edgar M.* (1975) 14 Cal.3d 727, 731, 737-738 [122 Cal.Rptr. 574, 537 P.2d 406].) In the present case such approval was given by an order made by the juvenile court judge on a printed form which recited that the court had found (in the language of § 734) that appellant would probably benefit from the treatment provided by the Youth Authority. The order did not repeat, however, the referee's declared reasons for recommending such a commitment. Appellant neither objected to the absence of findings nor requested a rehearing of the disposition order in the juvenile court. (See § 252 (former § 558).)

■ We observe, initially, that there presently exists no due process necessity that express findings be made in cases of this kind. Thus far, the United States Supreme Court has recognized a constitutional requirement only in the "critical" situation in which a juvenile court has waived its own jurisdiction over the minor in favor of adult criminal proceedings. In such a case, the high court has required that the juvenile courts furnish a statement of the reasons supporting the waiver in order to assure an appellate review that has meaning. (*Kent* v. *United States* (1966) 383 U.S. 541, 561 [16 L.Ed.2d 84, 97, 86 S.Ct. 1045]; see *In re Sturm* (1974) 11 Cal.3d 258, 269, fn. 13 [113 Cal.Rptr. 361, 521 P.2d 97].)

In contrast, the minor in the present case is retained within the jurisdiction of the juvenile court. As we shall note, the decision to retain and commit a minor to the Youth Authority ordinarily is accompanied by a record which amply discloses the reasons supporting the commitment.

Furthermore, there is no statutory requirement that either the juvenile court or referee express the reasons which support a minor's commitment to the Youth Authority. Section 726 states that ". . . no ward or dependent child shall be taken from the physical custody of a parent or guardian unless upon the hearing the court finds . . . that the parent or guardian is incapable of providing . . . for the minor" (subd. (a)), that the minor has failed to reform while on probation (subd. (b)), or that "the welfare of the minor requires that his custody be taken from his parent or guardian" (subd. (c)). In addition, as previously noted, section 734 requires a determination of probable benefit to the minor from a Youth Authority placement. Apart from these two sections, the Legislature has not imposed any requirement that particular findings be entered in support of a commitment order.

 Appellant, while acknowledging the absence of any constitutional or statutory requirement of express findings, nonetheless urges that, as a policy matter, we should compel such findings pursuant to "our supervisory authority over state criminal procedure." (See *In re Podesto* (1976) 15 Cal.3d 921, 938 [127 Cal.Rptr. 97, 544 P.2d 1297].) In *Podesto* we imposed a requirement that trial courts render a brief statement of reasons in support of an order denying a motion for bail on appeal, to insure significant appellate review. It should be noted, in passing, that denials of bail occur in the absence of any previous formal hearing on the matter, and generate no substantial reviewable record. We explained in *Podesto* that findings serve several worthy purposes: They help to assure a realistic review by providing a method of evaluating a judge's decision or order; they guard against careless decision making by encouraging the trial judge to express the grounds for his decision; and they preserve public confidence in the fairness of the judicial process. (*Id.*, at p. 937; see also *In re Bye* (1974) 12 Cal.3d 96, 110 [115 Cal.Rptr. 382, 524 P.2d 854] [statement of reasons supporting revocation of outpatient status for narcotics addict]; *In re Sturm, supra,* 11 Cal.3d 258, 269-272 [statement of reasons for denying parole].)

Courts, however, have not required findings, or a statement of reasons, in every type of proceeding. (E.g., *People* v. *Edwards* (1976) 18 Cal.3d

796, 805-806 [135 Cal.Rptr. 411, 557 P.2d 995] [denial of probation]; *Kawaichi* v. *Madigan* (1975) 53 Cal.App.3d 461, 466 [126 Cal.Rptr. 63] [denial of release on one's own recognizance pending trial]; *People* v. *Ruiz* (1975) 53 Cal.App.3d 715, 717-718 [125 Cal.Rptr. 886] [revocation of probation].) In declining to impose a requirement that trial courts state their reasons for denying probation in a criminal case, we explained in *Edwards* that, unlike the *Podesto* situation, such a requirement was unnecessary to insure a proper appellate review, for the record on appeal from a judgment denying probation is usually sufficient for that purpose, containing "a full record of all proceedings including the probation and sentencing hearing itself; there is thus a solid basis for review . . . ." (18 Cal.3d at p. 804.) Furthermore, we pointed out that a judge who is aware that his judicial conduct is subject to review on a full record "is not likely to make a hasty or careless decision. Thus an element of compulsion to exercise care and sound judgment is present without the requirement of an articulated statement of reasons . . . ." (P. 805.)

Similar considerations move us herein. The record of a disposition hearing in juvenile court ordinarily will provide an adequate appellate record from which to determine the reasons supporting any Youth Authority commitment. The probation report, together with a transcription of the hearing and the referee's remarks and conclusions usually will accompany every record on appeal. As noted above, the record herein does contain the various reasons given by the referee in support of his order, and we discern no valid purpose which would be served by requiring the juvenile court judge to repeat those or other reasons in his commitment order. In the absence of any contrary indication in the record, we think it fair to presume from the judge's approval of the order that the judge relied upon the same or similar reasons as those stated by the referee.

Appellant relies on *In re Lawrence B.* (1976) 61 Cal.App.3d 671, 673 [132 Cal.Rptr. 599], wherein the court held that an order couched only in the conclusionary terms of section 726 is insufficient to support a Youth Authority commitment. We are more persuaded, however, by the force of the dissenting opinion of Justice Jefferson who observed in *Lawrence B.,* "By its express terms, Welfare and Institutions Code section 726 requires a finding *only* in the language of the statute. [¶] . . . Additional, express findings are neither mandated by any provision of the State of California Constitution, nor the United States Constitution, nor by any section of the Welfare and Institutions Code, nor by the decisional law of

this state. An appellate court ought not, by *judicial fiat,* [to] interpret the plain and unambiguous language of Welfare and Institutions Code section 726 as requiring anything additional to what the statute itself explicitly requires." (P. 676, italics in original.) The dissent further found significance in the fact that in 1975 the Legislature amended section 707 to require a recital in the court's order of the various factors which led the court to conclude that a minor was not a fit and proper subject for juvenile court; no similar amendment was made to section 726. In this connection, and in a similar vein, we observe that in adult criminal proceedings the Legislature has expressly required the sentencing court to "state the reasons for its sentence choice on the record at the time of sentencing." (Pen. Code, § 1170, subd. (c).) The Legislature has the means by which to require such a statement when it elects to do so. To the extent that *Lawrence B.* is contrary to the views expressed herein, we disapprove it.

◼ In the present case, as appellant points out, the record fails to indicate, affirmatively, whether the juvenile court judge had reviewed either the transcript of the proceedings before the referee, or the referee's informal findings, prior to the judge's approval of the commitment order. Apparently the action of the referee and juvenile court judge occurred on the same day, suggesting that the latter could not have had available the transcript of proceedings conducted before the referee. Appellant contends that, under such circumstances, the judge's approval must be considered "perfunctory" and inadequate. In appellant's view, the referee's order properly could not become operative until the full transcript of the proceedings before the referee had been prepared and reviewed by the approving judge.

The juvenile court judge, however, did have the benefit of an 11-page probation officer's report containing a behavioral evaluation, reason for the hearing, statements of minor, parents, interested parties, a detailed "Previous History" and a "Progress Under Supervision" report.

Appellant's contention, moreover, fails to distinguish between the *approval* procedure (§ 249 (former § 555)) and the *rehearing* procedure (§ 252 (former § 558)) which appellant waived in this case. An application for rehearing requires a reexamination of the entire record by the juvenile court judge; it is necessary that the judge examine the complete transcript of the proceedings before the referee in order to exercise an informed independent judgment. (See *In re Edgar M., supra,* 14 Cal.3d 727, 737; *In re Damon C.* (1976) 16 Cal.3d 493, 497-498 [128 Cal.Rptr.

172, 546 P.2d 676].) On the other hand, an approval of a referee's order removing a minor from his parents' custody must occur *within two judicial days.* (Cal. Rules of Court, rule 1318(b).) This rule, enacted to insure that such orders become operative without undue delay, further provides that "The approval of a referee's order by a judge in these circumstances *is not a rehearing on the merits."* (*Ibid.,* italics added.)

As the advisory committee comment to rule 1318 explains, the approval provision of former section 555 (now § 249) was intended only as a requirement that the referee's order be "countersigned" by a juvenile court judge, thereby attesting to the authenticity of the order. (Judicial Council of Cal., Annual Rep. (1977) p. 41.) According to the comment, ". . . the approval procedures are, in effect, a requirement for a second signature, by a judge, before the referee's order becomes 'effective,' *i.e.,* operative." (*Ibid.;* see also *In re Edgar M., supra,* 14 Cal.3d 727, 737-738; *In re Dale S.* (1970) 10 Cal.App.3d 952, 956 [89 Cal.Rptr. 499].)

It is true that the requirement of approval by a juvenile court judge derives from the constitutional mandate that referees are restricted to performing "subordinate judicial duties." (Cal. Const., art. VI, § 22; see *In re Edgar M., supra,* 14 Cal.3d at p. 732.) Yet, as the framers of rule 1318 recognized, that constitutional requirement is fully satisfied by obtaining the countersignature of a juvenile court judge, so long as opportunity to seek a full rehearing remains available on request. Given the availability of the rehearing procedure, no reason appears why the initial approval of the referee's order may not be based solely on the probation report, any other documentary evidence in the case, and any summaries of testimony which may accompany the record, without requiring the preparation and review of the entire transcript, necessitating a lengthy delay and precluding compliance with the two-day-approval provision of rule 1318(b). Indeed, were appellant's contention to be accepted, a minor would be entitled, in effect, to seek two rehearings of the referee's decision, surely, an uneconomical use of judicial resources.

Appellant next asserts that a specific-findings requirement is necessary in order to implement our decision in *In re Aline D., supra,* 14 Cal.3d 557, wherein we held that a Youth Authority commitment "must be supported by a determination, based upon substantial evidence in the record, of probable benefit to the minor." (P. 567.) In *Aline D.,* the juvenile court ordered such a commitment despite its express doubts that

the ward would benefit from such treatment. We observed that a " '. . . commitment to the Youth Authority is generally viewed as *the final treatment resource* available to the juvenile court . . . .' " (P. 564, italics in original.) Nothing we stated in *Aline D.,* however, would support the argument that the juvenile court must enter express findings which explain the reasons in favor of a Youth Authority commitment. As we have previously noted, ordinarily the appellate record, including the remarks of the referee at the dispositional hearing, form an adequate basis for determining the propriety of the commitment.

A recent case by the Court of Appeal analyzes the relevant cases and reaches a conclusion fully in accord with our holding herein and our earlier expressions in *People* v. *Edwards, supra,* 18 Cal.3d 796. In *In re Robert D.* (1977) 72 Cal.App.3d 180, 188 [139 Cal.Rptr. 840], the court rejected the argument that a statement of reasons must be given to support the denial of a rehearing by a juvenile court judge of a referee's decision declaring the petitioner a ward of the juvenile court and committing him to a placement facility. On the basis of its study of the pertinent cases, the court concluded that "No statement of reasons for decision is required where: (1) the action is judicial in nature; (2) involves a discretion exercised upon totality of circumstances rather than specific criteria; (3) the interplay of the circumstances is set forth in a record; and (4) judicial review on the record is a matter of right and not appellate discretion. [Citations.]" (P. 188; see also *In re Willy L.* (1976) 56 Cal.App.3d 256, 265 [128 Cal.Rptr. 592].)

■ Appellant further contends that, under *Aline D.* a commitment to the Youth Authority should never be ordered until "less restrictive" placements have been attempted. To the contrary, the circumstances in a particular case may well suggest the desirability of a Youth Authority commitment despite the availability of such alternative dispositions as placement in a county camp or ranch. (See *In re Willy L., supra,* at p. 265; *In re Lawrence B., supra,* 61 Cal.App.3d 671, 677 (dis. opn.).) *Aline D.* stressed the importance of finding a probable benefit to the minor before a Youth Authority commitment can be upheld. In the present case, such a finding was made and was included in the court's order. Evidence appearing in the probation report that the minor had a lengthy history of gang involvement and several prior violent offenses amply supported that finding.

Appellant argues that the evidence was insufficient to sustain the referee's finding that he had participated in the robbery and assault. However, the victim made a positive identification of appellant at the field lineup conducted shortly after the offense occurred. Appellant also contends that his trial counsel was incompetent because of counsel's failure to recall one witness and to explore other possible defenses. The matters of which appellant complains were each matters involving possible tactical decisions by counsel "as to which we will not ordinarily exercise judicial hindsight. [Citations.]" (*People* v. *Beagle* (1972) 6 Cal.3d 441, 458 [99 Cal.Rptr. 313, 492 P.2d 1]; see *People* v. *Najera* (1972) 8 Cal.3d 504, 516 [105 Cal.Rptr. 345, 503 P.2d 1353].)

The order committing appellant to the Youth Authority is affirmed.

Mosk, J., Clark, J., and Manuel, J., concurred.

**NEWMAN, J.**—I concur. It does not appear that there has been a miscarriage of justice in this case. I do not agree, however, with the majority's conclusion that it is "fair to presume from the judge's approval of the [referee's] order that the judge relied upon the same or similar reasons as those stated by the referee."

The arguments that in recent years have persuaded the Legislature, this court, and other courts to insist that judges state reasons in analogous proceedings seem to me persuasive here. Further, to require that reasons be stated would often be more efficient and less time consuming than would a formal rehearing pursuant to Welfare and Institutions Code section 252.

Tobriner, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I agree with my colleague, Justice Newman, that a judge of the juvenile court should state reasons on the record before removing a minor from his home and committing

him to the California Youth Authority.[1] Not only is this procedure more efficient and less time consuming than a formal rehearing under Welfare and Institutions Code section 252, it is mandated by statute and by the United States and California Constitutions.

## I

The facts are instructive. A petition was filed against appellant, John H., in the Juvenile Court of Los Angeles County on October 28, 1975. A referee ordered appellant detained on October 29th, and on November 14th, a second referee found him to be a proper subject to be dealt with under the Juvenile Court Law. A third referee sustained the petition filed against appellant on November 18th.

The dispositional hearing was held in the early afternoon of December 1st before a fourth referee. Both the probation officer and the investigating police officer recommended a camp placement. Although appellant had never previously been placed in any setting outside his home, the referee ordered appellant committed to the Youth Authority. Later that same afternoon, a judge of the juvenile court signed an order entitled "COMMITMENT TO THE YOUTH AUTHORITY (Juvenile)," which "hereby committed [appellant] to the Youth Authority . . . ." That form contained a preprinted sentence stating that "[t]he mental and physical condition and qualifications of this person are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority." At the time the judge signed this order, no transcript of the jurisdictional or dispositional hearing had been prepared. Thus the judge was unaware of the evidence presented at the jurisdictional and dispositional hearings, the arguments of appellant's counsel, and the basis on which the referee decided to commit appellant to the Youth Authority. A probation report had been

---

[1]The leading authorities who have considered this issue are in accord with this conclusion. (See Standards Relating to Dispositional Proceedings, Institute of Judicial Administration—American Bar Association Joint Juvenile Justice Standards Project (Tentative Draft 1977) Standard 7.1, p. 51; National Advisory Commission on Criminal Justice Standards and Goals, Report on Corrections (1973) Standard 5.19, p. 195 and Report on Courts (1973) Standard 14.5, p. 304; Council of Judges of the National Council on Crime and Delinquency, Model Rules for Juvenile Courts (1969) Rule 32, p. 70; cf. K. Davis, Discretionary Justice (1969) p. 133; Berkowitz, *The Constitutional Requirement for a Written Statement of Reasons and Facts in Support of the Sentencing Decision: A Due Process Proposal* (1974) 60 Iowa L.Rev. 205; F. Cohen, *Sentencing Probation, and the Rehabilitative Ideal: The View from Mempa v. Rhay* (1968) 47 Texas L.Rev. 1, 24-25; see also *Matter of Geary* (1977) — Mont. — [562 P.2d 821, 823].)

prepared before the dispositional hearing, but the record is silent as to whether the judge saw it before he signed appellant's commitment order.

The day after the judge signed the commitment order, an unsigned document entitled "FINDINGS AND ORDER OF REFEREE DISPOSITION #1)" was filed. Two boxes were checked off on this form. Next to these boxes was boilerplate language taken from Welfare and Institutions Code sections 726,[2] subdivision (c), and 734.[3] The record does not reveal who checked these boxes. The judge's name is typed at the top of the form, but neither the name nor the signature of the referee who conducted the dispositional hearing appears.

## II

On this record, the majority holds that the juvenile court judge (1) "expressly approved" the referee's order removing appellant from his home (§ 249),[4] and (2) "fully satisfied" himself that the minor would benefit from Youth Authority commitment (§ 734).

In holding that section 249 was complied with, the majority interprets the words, "expressly approved," as requiring a mere countersignature by the judge of the referee's order. (Maj. opn., *ante,* at p. 26.) This analysis is erroneous for several reasons. First, there was *no* signed order by the referee which the judge could have countersigned. It is unlikely that the Legislature meant to do away with the referee's signature altogether, since the word "countersign" implies the existence of a prior signature to be authenticated. Moreover, even if one were to assume that the referee's order was the unsigned document entitled "FINDINGS AND ORDER OF REFEREE (DISPOSITION # 1)," the judge cannot be deemed to have "countersigned" this order, since it was not prepared until *after* the

---

[2]Section 726 states in pertinent part: ". . . no ward or dependent child shall be taken from the physical custody of a parent or guardian unless upon the hearing the court finds one of the following facts: . . . (c) That the welfare of the minor requires that his custody be taken from his parent or guardian."

All statutory references hereinafter are to the Welfare and Institutions Code.

[3]Welfare and Institutions Code section 734: "No ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority."

[4]Welfare and Institutions Code section 249: "No order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court."

judge had signed the commitment papers and it was never signed by the judge.[5]

By focusing on the act of countersignature, the majority misreads the Legislature's intent in requiring express approval by a judge of a referee's order. The majority opinion bases its narrow reading of section 249 on the advisory committee comment to rule 1318 of the California Rules of Court. (Maj. opn., *ante,* at p. 26.)[6] The advisory committee, in turn, relied on the report of a special juvenile justice study commission in 1960. (Governor's Special Study Com. on Juvenile Justice, Part I, Recommendations for Changes in California's Juvenile Court Law (1960) p. 36.)[7] Recommendation 19, subdivision (C), of the report reads in part: "In the event the child is removed from his home, the referee's order is final when *countersigned* by the juvenile court judge, provided no request for review is made within the three day period." (*Ibid.,* italics added.)

However, the comment to Recommendation 19 shows that the express approval provision of section 249 was meant to require more than a mere countersignature by the juvenile court judge. At the time the commission recommended enactment of section 555 (now § 249), current law required referees "to submit [all] their findings to the juvenile court judge for final approval prior to the implementation of the disposition." (Governor's Special Study Com., Part I, *supra,* at p. 36.) The commission believed this procedure "place[d] an excessive burden on the conscientious juvenile court judge who [was] already overworked and *often force[d] approval to be rendered on a perfunctory basis.*" (*Ibid.,* italics added.) Therefore, the commission recommended that this approval procedure be dropped altogether where the referee did not "remove the child from his home." (*Ibid.*) In all other dispositions, however, the prior

---

[5]"To 'countersign' is to add one's signature to a document *after another's* to attest authenticity of the document." (Judicial Council of Cal., Annual Rep. (1977) p. 41.) (Italics added.)

[6]Rule 1318(b) reads in pertinent part: "The following orders made by a referee shall not become effective unless expressly approved by a judge of the juvenile court within two judicial days: (1) Any order removing a minor from the physical custody of the person legally entitled thereto; . . ."

[7]The commission was created by the governor in 1957. The Legislature based the comprehensive revision of the California Juvenile Court Law in 1961 (Stats. 1961, ch. 1616, §§ 1-5, pp. 3459-3508) largely upon the commission's recommendations. Among its statutory proposals was former section 555 (now § 249) which the Legislature enacted verbatim. (Governor's Special Study Com. on Juvenile Justice. Part I, *supra,* at p. 58.)

procedure—requiring something more than "approval . . . on a perfunctory basis"—was to be retained. In the present case the referee's order was for the removal of appellant from his home. Clearly, something more than "perfunctory" approval of that order by the judge was contemplated by the Legislature when it enacted section 249. (See *In re Dale S.* (1970) 10 Cal.App.3d 952, 956 [89 Cal.Rptr. 499].)

The appellate record in the present case is devoid of any indication that the judge's express approval of the referee's order—if such approval can be inferred from the act of signing the commitment to the Youth Authority—constituted anything more than a perfunctory act. It is clear that the judge did not have the benefit of a reporter's transcript of the dispositional or jurisdictional hearings for they were not prepared until three months later. The judge did not have the benefit of the referee's written order (if the unsigned "FINDINGS AND ORDER OF THE REFEREE" is indeed the referee's order), since it was not filled out until the next day.[8] Finally, there is no indication that the judge "did have the benefit of an 11-page probation officer's report . . . ." (Maj. opn., *ante,* at p. 25.) Although this report was in existence and hence theoretically available to the judge, there is a distinction between having it available and actually reviewing it. Indeed, the record does not even reflect that the probation report was transferred from the courtroom where the dispositional hearing was held to the courtroom of the judge who signed the commitment to the California Youth Authority.

In addition to section 249, the California Constitution requires more than a mere perfunctory approval by a juvenile court judge of a referee's order to remove a minor from his home. Article VI, section 22 of our state Constitution restricts referees to the exercise of "subordinate judicial duties." (*In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406].) There is no question that the conduct of a contested dispositional hearing and the removal of a minor from his home are *not* subordinate judicial duties. (*Id.,* at p. 735.) Therefore, to comply with the state Constitution, a referee's removal order must be reviewed and adopted in a meaningful way by a juvenile court judge.

The majority asserts that a judge's mere signature satisfies the constitutional command so long as the right to a rehearing before a judge

---

[8]It is illogical to "presume from the judge's approval of the order [of the referee] that the judge relied upon the same or similar reasons as those stated by the referee." (Maj. opn., *ante,* at p. 24.) The judge had no way of knowing what those reasons were, let alone the basis for them.

is available. (Maj. opn., *ante,* at p. 26.) However, mere endorsement does not suffice to make a referee's order that of a judge. (See *In re Edgar M., supra,* 14 Cal.3d at p. 738.) While a minor may waive his statutory right under section 252 to a rehearing, such a waiver cannot expand the authority of a referee beyond the limits set by the citizens of this state when they approved article VI, section 22. In effect, the majority's holding allows referees, on their own, to remove minors from the custody of the parents, a clear violation of the California Constitution.

The majority has also diluted the duties imposed on a juvenile court judge when committing a minor to the California Youth Authority. In enacting section 734, the Legislature set forth specific language that before a juvenile may be committed to the California Youth Authority, a "*judge* of the court" must be "*fully satisfied* that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority." (Italics added.) Section 734 is the *only* statute among the surrounding provisions in the Welfare and Institutions Code that requires action by a *judge* rather than by the *juvenile court,* which would include the court referees. (See § 725 et seq.; compare § 249.) In pinpointing the "judge" as opposed to the juvenile court generally, the Legislature made clear that it was the judge's duty to *personally* evaluate the minor's suitability before any commitment could be made to the Youth Authority.

By ignoring this requirement and focusing on Welfare and Institutions Code section 726, which provides that no juvenile may be taken from the physical custody of a parent "unless upon the [dispositional] hearing the court finds one of [certain enumerated] facts," the majority sidesteps the real issues presented by this case. There is no question that section 726 was satisfied.[9] This single-minded focus on section 726 enables the majority to overlook the requirements of sections 249 and 734 that a *judge* of the juvenile court must perform certain duties when a minor is placed outside his home or committed to the California Youth Authority.

---

[9]By the use of the words, "upon the hearing," in section 726, the Legislature has indicated that the duty to make the findings required by this section is imposed solely upon the officer of the court who personally conducts the dispositional hearing—here, a referee. Since the record indicates that the referee who conducted the dispositional hearing stated that "the welfare of the minor requires that custody be taken from the parents" (cf. § 726, subd. (c)) and since the referee fully set forth the reasons underlying this finding, section 726 was clearly satisfied.

### III

In other contexts, this court has required judges to express their reasons for dispositional choices because it serves important judicial interests. (*In re Sturm* (1974) 11 Cal.3d 258, 269-270 [113 Cal.Rptr. 361, 521 P.2d 97]; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 516-517 [113 Cal.Rptr. 836, 522 P.2d 12]; *In re Podesto* (1976) 15 Cal.3d 921, 937 [127 Cal.Rptr. 97, 544 P.2d 1297].) Without a written statement by a judge of the reasons for a decision, the appellate courts cannot determine whether a judge has properly exercised his authority. (Commentary, Standards Relating to Dispositional Proceedings, *supra,* Standard 7.1, p. 53; see also Commentary, National Advisory Commission on Criminal Justice Standards and Goals, Report on Corrections, *supra,* pp. 195-196; and F. Cohen, *Sentencing, Probation, and the Rehabilitative Ideal: The View from Mempa v. Rhay, supra,* 47 Tex.L.Rev. at p. 25.) A juvenile court's discretion is limited in making Youth Authority commitments, since such commitments are considered dispositions of last resort under the Juvenile Court Law. (See § 202 (former § 502);[10] *In re Aline D.* (1975) 14 Cal.3d 557, 566 [121 Cal.Rptr. 816, 536 P.2d 65]; *In re Arthur N.* (1976) 16 Cal.3d 226, 237 [127 Cal.Rptr. 641, 545 P.2d 1345]; *In re Maria A.* (1975) 52 Cal.App.3d 901, 903 [125 Cal.Rptr. 382].) Accordingly, a statement of reasons by the court is necessary if the appellate courts are to determine whether the juvenile court has acted within its statutorily limited discretion.

Appellate review of the juvenile court judge's express approval of the referee's order can hardly be meaningful on the record now before this court. The court is asked to assume (1) that the judge gave his express approval to the referee's order; (2) that the judge based the presumed express approval on a document which he may never have seen; and (3)

---

[10]Section 202, subdivision (a) provides in part: "The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state; . . . to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when necessary for his welfare or for the safety and protection of the public; and, when the minor is removed from his own family, *to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents.* This chapter shall be liberally construed to carry out these purposes." (Italics added.) (Stats. 1977, ch. 910, § 1, No. 3 Deering's Adv. Legis. Service, p. 1546.)

The quoted language is substantially the same as that in former section 502 which was operative at the time of John H.'s dispositional hearing. (Stats. 1961, ch. 1616, § 2, p. 3460.) Section 502 was repealed in 1977. (Stats. 1977, ch. 910, § 4, No. 3 Deering's Adv. Legis. Service, p. 1548.)

that the reasons the judge had for giving his presumed approval were among the reasons contemplated by the statute which required him to act.

Further, where the Legislature has made the juvenile court judge's performance of a prescribed duty (i.e., the personal evaluation called for by sections 249 and 734) the precondition to a critical dispositional decision, due process requires that there be meaningful appellate review of the judge's discharge of that statutory duty. (*Kent* v. *United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045].)[11] Meaningful review depends upon the judge's setting forth with sufficient specificity the reasons for his dispositional decision. (*Id.,* at p. 561 [16 L.Ed.2d at p. 97].) The appellate court "may not 'assume' that there are adequate reasons. . . ." (*Ibid.*) Yet this is precisely what the majority has done here. It has "presume[d] from the judge's approval of the [commitment] order that the judge relied upon the same or similar reasons as those stated by the referee." (Maj. opn., *ante,* at p. 24.) This presumption flies in the face of the facts that the referee's oral statement of reasons was untranscribed at the time of the judge's authorization and that the record does not indicate that the judge considered any materials related to the case before signing the commitment order. By indulging such a presumption, the majority serves notice that it will tolerate perfunctory compliance with sections 249 and 734 and abdicates this court's responsibility to assure fulfillment of the Legislature's purpose in enacting these statutes.

---

[11]The majority purports to distinguish the present case from *Kent* on this basis: *Kent* involved the juvenile court's "critically important" determination to waive its jurisdiction over a minor and to transfer him to adult court. The majority improperly implies that because "the minor in the present case is retained within the jurisdiction of the juvenile court" (maj. opn., *ante,* at p. 23), the present proceedings are not critical. More than a decade ago, the Supreme Court held that adjudication proceedings *within* the juvenile court's jurisdiction were sufficiently critical to compel the basic protections of due process, since such proceedings carry within them ". . . the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21." (*In re Gault* (1967) 387 U.S. 1, 36-37 [18 L.Ed.2d 527, 551, 87 S.Ct. 1428] [fn. omitted].) In the same year, the court held that the right to counsel applies to adult sentencing proceedings given "the critical nature of sentencing." (*Mempa* v. *Rhay* (1967) 389 U.S. 128, 134 [19 L.Ed.2d 336, 340, 88 S.Ct. 254]; see *In re Perez* (1966) 65 Cal.2d 224 [53 Cal.Rptr. 414, 418 P.2d 6].) No reason appears why juvenile dispositional proceedings are not similarly "critical," particularly when they involve the risk of commitment to the Youth Authority, the most drastic placement alternative contemplated by the Juvenile Court Law. (See § 202 (former § 502); *In re Aline D., supra,* 14 Cal.3d at p. 566; *In re Arthur N., supra,* 16 Cal.3d at p. 237; *In re Bryan* (1976) 16 Cal.3d 782, 788 [129 Cal.Rptr. 293, 548 P.2d 693]; *In re Michael R.* (1977) 73 Cal.App.3d 327, 333-335 [140 Cal.Rptr. 716].) Thus, the proceedings involved in the present case are sufficiently critical to require the kind of meaningful appellate review mandated by *Kent.*

In building an adequate record the judge of the juvenile court guards "against the careless decision, insuring that the judge himself analyzes the problem and recognizes the grounds for his decision." (*In re Podesto, supra,* 15 Cal.3d at p. 937; see *In re Sturm, supra,* 11 Cal.3d at p. 269.) Although an articulation of reasons does not guarantee fairness, it certainly "pull[s] in that direction." (K. Davis, Disretionary Justice, *supra,* p. 131.)

If the juvenile court expresses the rationale for a specific disposition, public faith in the judicial process is reinforced, and the parties and the public are persuaded that "decision-making is careful, reasoned and equitable." (*In re Podesto, supra,* 15 Cal.3d at p. 937.) Regrettably, these goals have not been advanced by the majority's endorsement of perfunctory performance of judicial responsibilities.

Tobriner, J., concurred.

Appellant's petition for a rehearing was denied May 25, 1978. Bird, C. J., was of the opinion that the petition should be granted.