90 Cal.App.3d 300 (1979)
153 Cal. Rptr. 334
In re JAMES V., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
JAMES V., Defendant and Appellant.
Docket No. 33090.
Court of Appeals of California, Second District, Division Four.
March 9, 1979.
*302 COUNSEL
Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Tracy S. Rich, Ellen Fondiler and Edward H. Schulman, Deputy State Public Defenders, for Defendant and Appellant.
Evelle J. Younger, George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
FILES, P.J.
This is an appeal taken on behalf of a 17-year-old boy who was adjudicated a ward of the juvenile court (Welf. & Inst. Code, § 602) and committed to the Youth Authority upon findings that he had molested an 11-year-old girl (Pen. Code, § 647a) and compelled a 7-year-old girl to orally copulate (Pen. Code, § 288a).
The opening brief contends (1) commitment to the Youth Authority was an abuse of discretion, and (2) the order of the juvenile court judge approving the referee's commitment was made without adequate information. By a supplemental brief filed by permission after oral argument, *303 appellant contends that the commitment denies him equal protection of the law as compared with adult offenders.
The facts underlying the adjudication are not in dispute. By agreement the case was submitted on police reports. At the disposition hearing on April 11 and 12, 1978, the court had before it the probation officer's report, a report by a psychiatric social worker, a report from Dr. Blanc, a staff psychiatrist of the probation department, and one from Dr. Goodman, a clinical psychologist appointed by the court. Two deputy probation officers testified.
The probation report described five occurrences within an 11-day period in which the minor had detained or attempted to detain forceably a female child between the ages of 7 and 11. On the occasion of the adjudicated violation of Penal Code section 288a, the minor carried the child to a vehicle, placed her inside and put a knife to her stomach. Three days later he seized an 8-year-old girl from behind, put a knife to her chest and told her to take her sweater off. At that point another boy approached and the minor released the victim.
All of those reporting agreed that the minor had serious problems requiring psychiatric treatment. The probation officer recommended that the minor be placed in the custody of the probation department for treatment locally in a facility such as the Dorothy Kirby Center. Dr. Goodman described the minor's behavior as "very dangerous and aggressive in the community" and recommended intensive psychotherapy oriented towards sex offenders. Dr. Blanc wrote "[i]t is difficult for me to tell on the basis of this interview if the minor is dangerous or not. He can be dangerous if he is frustrated." The deputy probation officer who wrote the report testified that she felt the minor could be a danger to the community.
On the court's request the probation department had inquired of the Youth Authorities as to their programs. The response was that the Youth Authority had a program called WINTU for sex offenders, staffed with a psychiatrist and psychologist on a full time basis. The court was informed that both the Kirby Center and the WINTU program at that time were filled and had waiting lists.
After hearing argument from both sides the referee explained in detail his reasons for selecting the Youth Authority in preference to the legally available alternatives. He considered the psychological needs of the *304 minor as described in the reports on file, the nature of the offenses, which militated against allowing the minor to remain in an open facility until some treatment had been undertaken, and the fact that neither the Dorothy Kirby Center nor any other available placement locally offered treatment especially for those predisposed to sexual offenses.
The record supports the decision of the referee, which was approved by Judge Shepard. The minor's petition for rehearing was denied by Judge Kenyon.
Appellate counsel for the minor has asked that the court consider a letter dated August 31, 1978, from the Youth Authority to counsel stating that the minor will be entering the WINTU program "around late October 1978." The Attorney General has countered with a request to augment with a letter dated October 19, 1978, stating that the minor had arrived at the WINTU intensive treatment unit. (1) These letters, written after the juvenile court's decision, cannot be received here as an augmentation of the appellate record because an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration. (See People v. Pearson (1969) 70 Cal.2d 218, 221, fn. 1 [74 Cal. Rptr. 281, 449 P.2d 217]; People v. Preslie (1977) 70 Cal. App.3d 486, 490 [138 Cal. Rptr. 828]; Witkin, Cal. Criminal Procedure (1963) § 682; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 220, p. 4210.)
The letters do bring to the court's attention two matters of which it may take judicial notice. One is that the Youth Authority does provide a specialized treatment program for wards committed to it; the other is that time inexorably moves on.
These two circumstances, in combination, may have a significant impact upon the well-being of a minor whose disposition order is subjected to appellate review. Although juvenile appeals have precedence over all other cases (Welf. & Inst. Code, § 800) the successive steps of the appellate process bring the case up for appellate decision at a time when the minor's needs may be quite different from what they were when the disposition order was made. The appellate court does not know, and is not expected to consider, whether the minor is doing well or otherwise under the treatment provided by the Youth Authority. Whether to remove a minor from a program in which he has participated for months is a different question from whether to send him there in the first place. This time-gap problem, which exists whenever an appeal is taken from a *305 child custody order (see Stack v. Stack (1961) 189 Cal. App.2d 357, 359 [11 Cal. Rptr. 177]) may make the appellate decision more valuable as authority for future cases than as a means of benefiting the minor. These circumstances militate strongly in favor of the general rule that an appellate court will not lightly substitute its decision for the disposition ordered by the juvenile court.
Appellant's second contention is that when Judge Shepard signed his name on the referee's disposition order and executed the commitment to the Youth Authority on the day when the referee's order was made, the judge did not have sufficient information to give the approval required by Welfare and Institutions Code section 249 and to become "fully satisfied" as is required by section 734.[1]
(2) The record does not show what Judge Shepard did before he gave his approval. The papers in the juvenile court file were available and were adequate to inform him of the essential facts, and we cannot assume that he failed to consider the record which was before him. It was not necessary that he have a reporter's transcript of the dispositional hearing. (See In re John H. (1978) 21 Cal.3d 18, 26 [145 Cal. Rptr. 357, 577 P.2d 177].)
Furthermore, the record shows that, when Judge Kenyon signed his order of May 25, 1978, denying the minor's petition for a rehearing, he endorsed upon the order his statement that he had "considered the entire record" and that the reporter had read to him the transcript of the April 11 hearing, which moving counsel had not requested to be transcribed. The transcript of the April 12 proceedings had theretofore been transcribed.
The review by Judge Kenyon removes any possibility of prejudice from the asserted incompleteness of Judge Shepard's examination.
Appellant's constitutional argument is captioned "The commitment of a juvenile offender to the California Youth Authority for the upper term *306 ... violates constitutional guarantees of equal protection." This caption misstates the issue. A juvenile court commitment to the Youth Authority does not specify a term. Subject to some statutory limitations the Youth Authority may, under Welfare and Institutions Code section 1766, confine the juvenile or permit him liberty under supervision, and discharge him when it is satisfied that that is consistent with the protection of the public.
What appellant is talking about is the following language in Welfare and Institutions Code section 726, subdivision (c):
"In any case in which the minor is removed from the physical custody of his parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court.
"As used in this section and in Section 731, `maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled.
".... .... .... .... ..."
Welfare and Institutions Code section 731 also contains this language: "A minor committed to the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. Nothing in this section limits the power of the Youth Authority to retain the minor on parole status for the period permitted by Section 1769."
In conformity with section 726 the juvenile court's dispositional order included the following statement: "Maximum confinement on Ct. I [Pen. Code, § 647a] is 6 mo. Maximum confinement Ct. VII [Pen. Code, § 288a] is 4 years; to run concurrently."
*307 (3) Appellant's point is that an adult convicted of a violation of Penal Code section 288a may be sentenced to state prison for a term of two, three or four years, subject to credit under Penal Code section 2900.5 for time in preconviction custody, but the upper term of four years may be imposed upon an adult only if the court makes a finding of aggravating circumstances. (Pen. Code, § 1170, subd. (b).) No such findings were made by the juvenile court in this case. Appellant also points out that the Youth Authority may keep a minor on parole longer than is provided for adult offenders. Appellant's counsel contends that all of these differences between the restraints imposed upon adult offenders and those which may be imposed upon a minor constitute a denial of equal protection of the laws.[2]
The issue here has not been decided by any of the prior decisions of the higher courts. People v. Olivas (1976) 17 Cal.3d 236 [131 Cal. Rptr. 55, 551 P.2d 375], relied upon by appellant, decided that adult criminals committed to the Youth Authority were entitled to equality with adults sentenced to prison; but the Olivas court (at p. 243, fn. 11) expressly reserved consideration of the issue with regard to juveniles.
Nor is the decision here necessarily controlled by the cases requiring that some of the constitutional safeguards of the criminal trial process be employed in the adjudication of juvenile wardship. Those procedures carry out the state's compelling interest in preventing accidental conviction of the innocent. (See In re Winship (1970) 397 U.S. 358, 365 [25 L.Ed.2d 368, 375-376, 90 S.Ct. 1068]; McKeiver v. Pennsylvania (1971) 403 U.S. 528, 543 [29 L.Ed.2d 647, 659-660, 91 S.Ct. 1976].) That reasoning does not argue for equality of disposition as between adult and juvenile offenders.
The contention raised by appellant strikes at the most fundamental assumption of the Juvenile Court Law: that delinquent minors, because of their youth, should be treated differently from adult criminals. The challenge to that premise is now before the California Supreme Court *308 and there is no need for this court to express any views on that subject here.
For the resolution of the present appeal it is sufficient to point out that the order appealed from does not determine the amount of time which appellant must serve in custody or on parole. The Youth Authority will do that. We have no doubt that the Youth Authority is and will be cognizant of the statutory and constitutional limitations upon its exercise of discretion; and if a decision of the Supreme Court of California establishes a new limitation, the Youth Authority will not violate it in fixing appellant's term. If the Youth Authority should hold appellant beyond the established limit, there is a convenient judicial remedy.
The order appealed from complies with the existing statute which requires computation of the present statutory limitation upon confinement. The existence of this computation does not prejudice appellant.
The judgment is affirmed.
Kingsley, J., and Alarcon, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied May 3, 1979.
NOTES
[1] Welfare and Institutions Code section 249 states: "No order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court."

Welfare and Institutions Code section 734 states: "No ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority."
[2] This contention has been raised and discussed in two Court of Appeal opinions. In each of those cases, In re Eric J.[*] (Cal. App.) and In re Dennis C.[] (Cal. App.) the Supreme Court has granted a hearing. Related constitutional law issues have been discussed in In re Leonard R. (1977) 76 Cal. App.3d 100 [142 Cal. Rptr. 632] (credit under Pen. Code, § 2900.5 not required for a minor committed to the Youth Authority) and In re Harm R. (1979) 88 Cal. App.3d 438 [152 Cal. Rptr. 167] (time limitations on placement in a nonsecure institution).

[*] Reporter's Note: See 25 Cal.3d 522 [159 Cal. Rptr. 317, 601 P.2d 549] for Supreme Court opinion.
[] Reporter's Note: On January 17, 1980, the cause was retransferred to the Court of Appeal, Fifth District.