[Crim. No. 18621. In Bank. July 14, 1975.]

In re EDGAR M., a Person Coming Under the Juvenile Court Law.
KENNETH E. KIRKPATRICK, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
EDGAR M., Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, John J. Gibbons, Lawrence E. Biegel and Laurance S. Smith, Deputy Public Defenders, and David A. Binder for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Russell Iungerich, Deputy Attorneys General, for Plaintiff and Respondent.

John H. Larson, County Counsel, and John P. Farrell, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—In this case we examine the limitation on the powers of juvenile court referees imposed by the provision in article VI, section 22 of the Constitution that trial courts may be authorized to appoint "officers such as commissioners to perform subordinate judicial duties." A referee, acting without the consent of the minor or his counsel, held

adjudication and disposition hearings, found that Edgar M., who was under the age of 18 years at the time of the alleged commission of the offense, had committed a criminal act, and made orders purporting to declare the minor a ward of the juvenile court under section 602 of the Welfare and Institutions Code[1] and to remove him from his home. The minor filed a timely application under section 558 for a de novo rehearing before a judge (§ 560). A juvenile court judge purported to deny the application but this action did not occur until after expiration of the time at which section 558 declares that if the application has not been granted it "shall be deemed denied."

We conclude that actual review of and action upon the application by the judge *within the time prescribed* was necessary to (1) prevent the referee's acts from exceeding the constitutional limitations restricting such acts to subordinate judicial duties and (2) effectuate the legislative intent to limit the period during which an application for rehearing can remain pending and unresolved. Since the Constitution precludes the operation of section 558's provision for automatic denial of an application not acted upon before the deadline, we are of the opinion that the statutory purpose can best be effectuated by treating such application in accordance with the section's provisions in cases in which the proceedings were not taken down by an official reporter. In those cases the application for rehearing is "granted as of right," and we conclude by analogy that the expiration of the time for action on the minor's application should cause it to be automatically granted even though the proceedings in his case were in fact taken down by a reporter.

Because the minor was entitled to a rehearing, the orders made by the referee lacked the finality necessary for appeal under section 800. However, the subsequent order of the court denying a rehearing *purported* to be directed against a final judgment and accordingly was appealable as "an order after judgment" (§ 800). Treating the appeal as taken from this order, we reverse the purported denial of Edgar M.'s application for rehearing on the ground that he was entitled to be reheard as a matter of right.

On May 1, 1973, a juvenile court petition was filed charging Edgar M. with having committed an assault with a deadly weapon (Pen. Code, § 245, subd. (a)) on April 28, 1973, stating that he was 17 years old and had been taken by police to juvenile hall on April 30th, and praying that he

[1]All section references hereinafter are to the Welfare and Institutions Code unless otherwise indicated.

be adjudged a ward of the court under section 602. A detention hearing was held the next day, May 2d, before a juvenile court referee, who set an adjudication hearing before a different referee for May 16th and ordered that meanwhile the minor be detained in juvenile hall. The latter referee, who made the orders now before us, released defendant to the care of his family on May 16th and did not return him to custody until the conclusion of the disposition hearing on July 27th.

At the contested adjudication hearing, held May 31st, the referee heard evidence on the allegations of the petition and found that they were true and that Edgar M. was therefore within the court's jurisdiction under section 602. After continuances the referee held the disposition hearing on July 27th at the conclusion of which he adjudged Edgar M. to be a ward of the court under section 602, ordered him removed from his home and put into the county camp placement program, and further ordered that he be detained at juvenile hall pending execution of the dispositional order.

On August 3d the document embodying the referee's orders of July 27th was countersigned as "approved" by a juvenile court judge. The apparent purpose of this approval was to supply the prerequisite to the effectiveness of the referee's order for county camp placement imposed by section 555. At the time of this approval, the reporters' transcripts of the hearings of May 31st and July 27th were not yet available (see fn. 3, *post*), and there is no indication in the record that the judge held any hearing or had any information about the case beyond the contents of the superior court file.

An application for a de novo rehearing of the entire adjudication and disposition proceedings before a juvenile court judge (§ 560[2]) was timely filed on August 3d. This application was authorized by section 558, which further provides: "If all of the proceedings before the referee have been taken down by an official reporter, the judge of the juvenile court may, after reading the transcript of such proceedings, grant or deny such application." A judge denied the application on December 14, 1973. However, the order of denial came three months too late to have any effect under the statutory scheme because the period within which section 558 declares that the application must be granted or else be "deemed denied" had already expired.[3] The normal length of such

---

[2]Section 560 states: "All rehearings of matters heard before a referee shall be before a judge of the juvenile court and shall be conducted de novo."

[3]A substantial part of the time between the filing of the application on August 3d and its denial on December 14th was consumed in preparing the transcripts which section 558.

period is 20 days after the court receives the application, and the court can extend the period up to 45 days after such receipt.[4] No indication of any extension appears in the record, but even assuming maximum exercise of the court's extension power, the automatic denial prescribed by section 558 occurred no later than September 17, 1973.

As noted at the outset, we have concluded that it would be unconstitutional to give effect to a referee's orders declaring a minor to be a ward of the juvenile court and committing him to county custody if his application for rehearing before a judge had been denied by operation of law rather than by affirmative judicial act. A referee is constitutionally limited to the performance of "subordinate judicial duties." (Cal. Const., art. VI, § 22; *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 361-362 [110 Cal.Rptr. 353, 515 P.2d 297].) Although full judicial powers can be conferred on an otherwise qualified referee by "stipulation of the parties litigant" (Cal. Const., art. VI, § 21; *Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1, 5-6 [118 Cal.Rptr. 21, 529 P.2d 53]), there is here not only an absence of any such stipulation but an affirmative objection by the minor to the hearing of the case by any referee of the juvenile court.[5]

---

required the judge to read before making his ruling. Notations on the application in the record show the transcripts were ordered on September 6th and were "due" September 21st, and that the transcripts of the adjudication hearing (held May 31st) and disposition hearing (held July 27th) were filed on October 23d and October 10th respectively.

[4]From 1963 to 1971 the last sentence of section 558 was as follows: "If an application for rehearing is not granted within 20 days following the date of its receipt, it shall be deemed denied." This sentence was construed in *In re J. R.* (1970) 5 Cal.App.3d 597 [85 Cal.Rptr. 396] to refer to a 20-day period following the court's receipt of the *transcript.* In the face of this construction, the Legislature in 1971 added this sentence to section 558: "'However, the court, for good cause, may extend such period beyond 20 days, but not in any event beyond 45 days, following the date of receipt of the *application,* at which time the application for rehearing shall be deemed denied unless it is granted within such period." (Italics supplied.) The 1971 amendment indicates a legislative intent to measure both the 20-day limit and the 45-day limit on the granting of a rehearing from the date of receipt of the application.

[5]At the outset of the proceedings minor's counsel filed an affidavit, purportedly pursuant to Code of Civil Procedure section 170.6, asserting that Edgar M. could not have a fair hearing before the presiding judge of the juvenile court "or before any referee appointed under his authority." Since all referees are required by statute to be appointed and assigned cases by the presiding juvenile court judge (§§ 553, 554), the affidavit was tantamount to an objection to the hearing of the case by any referee of the juvenile court.

However, we reject the minor's claim that the affidavit caused the referee who conducted the hearing to become disqualified under Code of Civil Procedure section 170.6. That section's disqualification procedure may be used only against "the judge or court commissioner before whom such action or proceeding is pending or to whom it is assigned." (Code Civ. Proc., § 170.6, subd. (2).) The referee in the present case was acting

Plaintiff argues that under the rationale of *Rooney* v. *Vermont Investment Corp., supra,* 10 Cal.3d 351, 361-365, the subordinate judicial duties which a referee is constitutionally permitted to perform include at least those powers given referees by statute in 1966, when article VI was adopted in its present form. Since the Juvenile Court Law of 1961 and its amendments up to 1966 included the substance of the statutory scheme under which the present referee acted (see §§ 550-560), his actions would necessarily be valid under this theory as subordinate judicial duties. But the theory is unsound. In *Rooney* we were dealing with the powers of court commissioners, not the powers of juvenile court referees. We pointed out that the history of the drafting and adoption of section 22 of article VI indicates that the section was intended (1) to replace a prior provision that covered only superior court commissioners (former art. VI, § 14) and (2) to retain constitutional authorization for the long standing legislation (Code Civ. Proc., §§ 259, 259a) under which such commissioners had exercised their powers.

The applicability of section 22 to juvenile court referees presents a different picture. The section's phrase "officers such as commissioners" for the first time extended *express* constitutional sanction for the delegation by trial courts of subordinate judicial duties to persons holding positions *other* than court commissioner, including that of juvenile court referee.[6] The prior constitutional authorization for such delegation had arisen from the implicit inclusion in permissible judicial

as neither judge nor court commissioner (see fn. 6, *post*), and even if it were otherwise, he could not be disqualified by an affidavit that did not name him individually but was directed only against the entire class of referees appointed under the authority of the presiding juvenile court judge. To permit a single affidavit to disqualify more than one judge or commissioner would thwart the statutory rule that "[u]nder no circumstances shall a party or attorney be permitted to make more than one such motion [of disqualification] in any one action or special proceeding pursuant to this section." (Code Civ. Proc., § 170.6, subd. (3); see *Pappa* v. *Superior Court* (1960) 54 Cal.2d 350 [5 Cal.Rptr. 703, 353 P.2d 311].) Although the affidavit does specify the presiding juvenile court judge by name, the affidavit could at most only make the judge ineligible to "try any civil or criminal action or special proceeding of any kind or character [or] hear any matter therein which involves a contested issue of law or fact" (Code Civ. Proc., § 170.6, subd. (1)) and could not affect the validity of his appointment of or assignment of a case to any juvenile court referee under sections 553 or 554 of the Welfare and Institutions Code.

[6]We are aware that in Los Angeles County, where this case arose, most juvenile court referees, including the one who conducted the contested hearings in this case, hold appointments as commissioners of the superior court as well as being appointed by the presiding judge of the juvenile court under section 553 to serve as referees. While serving in the latter capacity their powers are wholly dependent upon the laws applicable to juvenile court referees and are not affected by the fact that they hold the additional and separate office of court commissioner.

powers under former article VI of the power of appointment by trial courts of masters and referees to assist in the fact finding process. (See *Estate of Johnston* (1970) 12 Cal.App.3d 855, 861 [91 Cal.Rptr. 116]; 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 228.) It appears from the history of section 22 (see *Rooney* v. *Vermont Investment Corp., supra,* 10 Cal.3d at pp. 361-365) that the drafters intended to include in "subordinate judicial duties" those functions constitutionally delegable to masters and referees under the prior version of article VI. On the other hand, there is no indication that the framers of section 22 focused their attention on the particular statutes which governed the activities of juvenile court referees in 1966 or intended to foreclose all possible questions of constitutional authorization for the nature and scope of the referees' duties prescribed by those statutes.

Although there has been little authoritative delineation of the constitutional limitations on judicial acts by juvenile court referees as such (see Judicial Council of Cal., 19th Biennial Rep. (1963) p. 84; Gough, *Referees in California's Juvenile Courts: A Study in Sub-Judicial Adjudication* (1967) 19 Hastings L.J. 3, 14-22), guidance is to be found in judicial explications of the roles of other types of referees. Our statutes permit a general reference of all the factual and legal issues of a civil case for binding determination by a referee *only* if the reference is consented to by the parties. (Code Civ. Proc., §§ 638, subd. 1, 644; *Estate of Hart* (1938) 11 Cal.2d 89, 91 [77 P.2d 1082].) Without the parties' consent there can be a reference of particular issues, but apart from the special instance of "the examination of a long account" (Code Civ. Proc., § 639, subd. 1; see *Fredendall* v. *Shrader* (1920) 45 Cal.App. 719, 723 [188 P. 580]) the referee's determinations in a compulsory reference are not binding until adopted by the court itself. (*Barker Bros., Inc.* v. *Coates* (1931) 211 Cal. 756, 758 [297 P. 8]; *Clark* v. *Millsap* (1926) 197 Cal. 765, 784-785 [242 P. 918]; *Williams* v. *Benton* (1864) 24 Cal. 424; *National Brass Wks.* v. *Weeks* (1928) 92 Cal.App. 318, 320 [268 P. 412].) While embedded in our Code of Civil Procedure, these distinctions between compulsory and noncompulsory references and limitations on the latter are patterned after the powers of masters in chancery. "It is not within the general province of a master to pass upon all the issues in an equity case, nor is it competent for the court to refer the entire decision of a case to him without the consent of the parties. It cannot, of its own motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented and devolve that duty upon any of its officers." (*Kimberly* v. *Arms* (1889) 129 U.S. 512, 524 [32 L.Ed. 764, 768, 9 S.Ct. 355].)

The powers of court commissioners under sections 259 and 259a of the Code of Civil Procedure which we held in *Rooney* were encompassed in the "subordinate judicial duties" permitted by article VI, section 22 of the Constitution (10 Cal.3d at pp. 361-367) contain similar limitations. Unless acting as a temporary judge on stipulation of the parties litigant (Cal. Const., art. VI, § 21; Code Civ. Proc., § 259a, subd. 4; *Sarracino* v. *Superior Court, supra*, 13 Cal.3d 1, 6) or dealing with certain ex parte, uncontested or collateral matters (Code Civ. Proc., § 259a, subds. 1, 3, 6), the commissioner must report his findings to the court "for approval, rejection or change" (Code Civ. Proc., § 259a, subd. 5) or for subjection to a hearing on exceptions (Code Civ. Proc., § 259a, subd. 2). Such contested findings reported to the court "are advisory only." (*Ellsworth* v. *Ellsworth* (1954) 42 Cal.2d 719, 723 [269 P.2d 3].)

The Juvenile Court Law directs referees to hear cases assigned by the presiding juvenile court judge "with the same powers as a judge of the juvenile court" (§ 554) but subjects the referee's findings and orders resulting from such hearings to procedures for their review by a regular judge. It is clear that without the availability of any review procedures the contested adjudication and disposition of a minor as a ward of the juvenile court by a referee acting without the parties' consent would violate the constitutional limitation upon his functions to "subordinate judicial duties" (art. VI, § 22). ■ The issue before us is whether the constitutional limitation was satisfied by the review rights afforded the minor in this case. We consider the sufficiency in this regard of (1) the judicial action actually taken on the minor's application for rehearing without regard to timeliness, (2) the effect of the delay in such action until after expiration of the statutory time limit, and (3) the judicial approval of the order removing the minor from his home given prior to any action on his application for rehearing.

Section 558 empowered the judge to deny the minor's application for rehearing only after reading the reporter's transcripts of the two proceedings on which the referee had based his findings and orders. Moreover, the section was amended in 1971 to provide that an application for rehearing "shall contain a statement of the reasons such rehearing is requested," affording the applicant full opportunity for written objections and argumentation.[7] Thus a judge's decision to deny

---

[7]The minor's application did not contain the required statement of reasons, but even though " '[s]hall' is mandatory" (§ 15), this deficiency should not be deemed a waiver of his rehearing rights under the circumstances present here. The application was on an official juvenile court form which made no provision for the required statement; the

the application and hence adopt the referee's determinations as those of the court is based on data amply sufficient for forming a judgment independent from that of the referee. Under these circumstances the referee's initial findings and orders become only advisory and their rendition constitutes no more than a subordinate judicial duty. (See *Barker Bros., Inc.* v. *Coates, supra,* 211 Cal. 756.)

In the present case, however, the judge did not affirmatively deny the application for rehearing until three months or more beyond the time at which section 558 provided that the application "shall be deemed denied" if not yet granted. Indeed, the judge did not even receive the hearing transcripts until over a month past the deadline. (See fns. 3 and 4, *ante,* and accompanying text.) By the statutory terms, therefore, the operative event denying the application was the passage of time, not any decision by a judge. Such an automatic denial would cause the referee's adjudication of wardship and order for removal from the home to become the acts of the court itself without any meaningful review of the proceedings by a judge in response to the minor's timely application for rehearing. Insofar as section 558 requires this result it violates the restriction on the referee's powers to subordinate judicial duties imposed by article VI, section 22 of the Constitution and accordingly is invalid.

We therefore examine section 558 for a construction that will eliminate this invalid application and yet preserve the parts and applications of the section which do not violate the constitutional provision and which the Legislature would have intended to put into effect if it had foreseen the constitutional restriction. (See *People* v. *Navarro* (1972) 7 Cal.3d 248, 261-262 [102 Cal.Rptr. 137, 497 P.2d 481]; *In re Perez* (1966) 65 Cal.2d 224, 231-232 [53 Cal.Rptr. 414, 418 P.2d 6].)

After stating when an application for rehearing may be made and what it should contain, section 558 continues as follows: "If all of the proceedings before the referee have been taken down by an official reporter, the judge of the juvenile court may, after reading the transcript of such proceedings, grant or deny such application. If proceedings before the referee have not been taken down by an official reporter, such application shall be granted as of right. If an application for rehearing is not granted within 20 days following the date of its receipt, it shall be

application was in fact accepted by the court and acted upon by the judge; and the hearing transcripts were required to contain "all of the proceedings before the referee" (§ 558), which necessarily included the parties' objections and arguments made to the referee at the hearings.

deemed denied. However, the court, for good cause, may extend such period beyond 20 days, but not in any event beyond 45 days, following the date of receipt of the application, at which time the application for rehearing shall be deemed denied unless it is granted within such period."

To strike the last two sentences from the section would remove the limits on the time during which an application for rehearing could be pending and awaiting action and would thus restore statutory authority for the court's tardy response to the application submitted by the minor. The section would then read as it did in the 1961 enactment of the Juvenile Court Law, from which the two sentences were omitted. However, the Legislature showed its dissatisfaction with this omission by introducing the sentences into the section by amendments in 1963 (see Judicial Council of Cal., 19th Biennial Rep. (1963) pp. 66, 84) and 1971 (see fn. 4, *ante*). The salutary purpose of these amendments was to prevent indefinite prolongation of uncertainty concerning the status of a referee's order as the order of the court.

We believe that the legislative intent will be more fully effectuated within the constitutional restraint by altering the operative effect of these sentences rather than striking them altogether. The quoted portion of section 558 provides that if the proceedings before the referee have *not* been taken down by an official reporter, an application for rehearing must be granted as a matter of right. If the proceedings *have* been taken down by a reporter but the judge does not in fact read the transcripts and act on the application within the required period, the proceedings should be treated as a practical matter as if they had been unreported. Thus we conclude that we can best harmonize the statutory purpose with the constitutional command by requiring that applications which would be "deemed denied" under the section's literal wording be instead granted as of right, thereby applying to unacted-upon applications based on reported proceedings the rule which the Legislature has laid down for applications based on unreported proceedings.

The referee's acts were not validated as subordinate judicial duties by the countersignature on August 3, 1973, of a juvenile court judge after the word "Approved" on the face of the referee's orders of July 27th adjudicating the minor a ward of the court and committing him to the county camp placement program. The apparent purpose of the judge's signature was to give immediate effect to at least the camp placement aspect of the referee's order under section 555, which states: "No order

of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court."[8] Approval under section 555 is not intended as a substitute for rehearing proceedings. (*In re Dale S.* (1970) 10 Cal.App.3d 952, 956 [89 Cal.Rptr. 499].) The record does not indicate what the judge had before him when he gave this approval beyond the bare findings and orders on the face of the document.[9] However, even a review of the superior court file would not inform the judge of the proceedings before the referee, which had not yet been transcribed (see fn. 3, *ante*), or give the judge the benefit of any showing the minor might make in opposition to the immediate execution of the custody order.[10] Under these circumstances the act of approval did not entail sufficient judicial review to make the referee's order that of a judge rather than of the referee alone and accordingly did not alter the rehearing rights to which the minor was entitled under section 558, construed in light of article VI, section 22, of the Constitution.

■ The rule under which we hold Edgar M. to be entitled to a rehearing should not be given full retroactive effect in view of the apparent uncertainty concerning the requirements of section 558 manifested by the handling of the present case (see fn. 3, *ante*). It is probable that in many of the past cases to which the rule might appear to apply there was in fact a review of the hearing transcript and issuance of a

---

[8]It should be noted that section 555 deals only with the effectiveness of an order for the disposition of the minor (§ 702) providing for removal from the home (§§ 730, 731) and does not apply to an order for temporary detention pending execution of the disposition order (§ 737). The propriety of the temporary detention order included in the referee's orders of July 27th is not in issue on this appeal.

[9]The document appears to embody the "written copy of his findings and order" which the referee was required by section 554 to furnish to the presiding judge of the juvenile court, but the only two findings included are as follows: (1) "Welfare of minor requires that custody be taken from parents or guardians." (2) "Custody of minor is taken from the parents and guardians and minor is placed in the care, custody, and control of the Probation Officer for camp placement."

[10]The possibility of a constitutional requirement which would afford the minor an opportunity to make such a showing is suggested in *Donald L. v. Superior Court* (1972) 7 Cal.3d 592, 599 [102 Cal.Rptr. 850, 498 P.2d 1098], where a juvenile court judge had granted a rehearing on his own motion under section 559 and we commented as follows: "We point out . . . that nothing in the Juvenile Court Law supports the presiding judge's stated policy of acting upon informal requests for rehearing without affording the parties opportunity to be heard. Such action, moreover, may well be of doubtful constitutionality. In view of the requirement that hearings on the issues of the minor's transfer to the criminal court and of jurisdiction of the juvenile court 'must measure up to the essentials of due process and fair treatment' (*Kent* v. *United States* (1966) *supra*, 383 U.S. 541, 562 [16 L.Ed.2d 84, 97-98, 86 S.Ct. 1045]; *In re Gault* (1967) 387 U.S. 1, 30 [18 L.Ed.2d 527, 547-548, 87 S.Ct. 1428]) we cannot approve any suggestion that other steps in the juvenile court process may be taken without affording the minor notice and an opportunity to be heard."

belated order by the juvenile court judge expressly granting or denying the application. Even in those cases in which the judge took no action and the application was deemed automatically denied under section 558 it is possible that in many or most instances the judge would have issued an express denial if he had acted on the basis of reading the transcripts. In all of these instances timely action by the reviewing judge either would not have changed the result or would at most have avoided delay. The existence of other instances in which a rehearing was not in fact granted but would have been granted under our ruling does not require that the ruling be given full retroactive effect in view of the apparent widespread reliance upon the constitutional validity of section 558 and the serious adverse effect that full retroactivity would have on the administration of justice. (See *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *In re Love* (1974) 11 Cal.3d 179, 187-189 [113 Cal.Rptr. 89, 520 P.2d 713].)

We therefore limit the retroactive application of our ruling as hereinafter set forth. Although the ruling shall apply to Edgar M. and to cases in which on the date of the filing of this opinion the time to appeal has not yet expired or an appeal has been taken and not yet finally determined, the ruling shall not otherwise affect the validity of (1) orders made by a juvenile court judge prior to the filing of this opinion purporting to grant or deny an application for rehearing or (2) findings or orders of juvenile court referees of which an application for rehearing was received by the court 45 or more days before the date of filing of this opinion. The cutoff point is fixed at the date of filing rather than the date of finality of our decision in order to avoid any possibility or suspicion that any necessity for accelerating the transcription of proceedings to comply with the new rule might cause or aggravate delays in transcribing proceedings not subject to it. Applications for rehearing received up to and including 44 days before the cutoff point and not expressly granted or denied within that period remain within the scope of our ruling so that its effect will not be altered by the happenstance of whether or to what extent the time for acting on the application was extended under section 558.

There remains for consideration the disposition of the appeal. Section 800 provides: "A judgment or decree of a juvenile court . . . [11] assuming

---

[11]The words omitted at this point are, "or *final* order of a referee which becomes effective without approval of a judge of the juvenile court." (Italics supplied.) Under section 556 such an order does not become final if a timely application for rehearing is made. Therefore the minor's application for rehearing precluded any possible reference by this omitted statutory language to the referee's orders now before us, even apart from

jurisdiction and declaring any person to be a person described in Section . . . 602 . . . may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment . . . ." The notice of appeal states that the minor "appeals from the orders of the Juvenile Court which sustained the petition of May 1, 1973, and declared him a ward of the court pursuant thereto." However, the notice of appeal was filed on January 11, 1974, and so was subsequent to the order of December 14, 1973, purporting to deny his application for rehearing.

A *timely* denial of Edgar M.'s rehearing application would have caused the referee's orders referred to in the notice of appeal to become appealable under section 800. Because the order of denial was not made within the period specified by section 558, the expiration of that period required that the application for rehearing be granted as of right and that the referee's orders be accordingly vacated for reasons already explained. Hence the referee's orders specified in the notice of appeal did not constitute an appealable judgment.

Nevertheless the order of December 14th *purported* to convert the referee's orders into a judgment of the court and therefore purported to be "an order after judgment" and thus to be appealable under section 800. Although Edgar M.'s entitlement to a rehearing as a matter of right had put the making of the order beyond the court's power, this invalidity did not impair the order's appealability. (*Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 366-370 [217 P.2d 951].)

Even though the minor's notice of appeal specifies only the referee's orders, we construe it as an appeal from the court's order denying a rehearing since the notice of appeal so construed raises only matters which both parties knew Edgar M. was seeking to present on appeal and plaintiff cannot have been misled. (See *Vibert* v. *Berger* (1966) 64 Cal.2d 65 [48 Cal.Rptr. 886, 410 P.2d 390]; *Luz* v. *Lopes* (1960) 55 Cal.2d 54, 59-60 [10 Cal.Rptr. 161, 358 P.2d 289]; *Adams* v. *Talbott* (1942) 20 Cal.2d 415 [126 P.2d 347].) Plaintiff has not questioned the sufficiency of the notice of appeal, and he relies squarely on the court's order denying a rehearing to meet the minor's attack on the referee's orders as exceeding the constitutional limitation to subordinate judicial duties (art. VI, § 22).

the applicability of section 555's requirement of a judge's approval for the effectiveness of a referee's order removing a minor from his home.

The order denying a rehearing is reversed.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

The petitions of both parties for a rehearing were denied August 13, 1975, and the opinion was modified to read as printed above.