JEFFERSON (Bernard), J.
I dissent.
The majority upholds as constitutional and not a violation of article VI, section 22 of the California Constitution that portion of Government *57 Code section 72190 which provides: “At the direction of the judges, commissioners may have the same jurisdiction and exercise the same powers and duties as the judges of the court with respect to any infraction.” I disagree. It is my view that section 72190 of the Government Code is unconstitutional insofar as it authorizes a commissioner to adjudicate “infraction” cases. It violates article VI, section 22 of the California Constitution which limits the Legislature’s power to authorize the appointment of commissioners and referees for the performance of “subordinate judicial duties.” I consider the adjudication of “infraction” cases as involving the exercise of full judicial power and not the exercise of subordinate judicial duties.
The majority advances a number of reasons for its holding. I find all of these reasons to be totally lacking in support in either logic, experience, or authority.
The majority considers it significant that traffic infractions comprise the least serious of the offenses defined in the Vehicle Code on the theory that infractions do not result in imprisonment, substantial fines, or suspension of driving privileges. Thus, the majority indicates that under Vehicle Code section 42001, the punishment for infractions is limited to fines not exceeding $50 for a first conviction, not exceeding $100 for a second conviction within a period of one year, and not exceeding $250 for a third or any subsequent conviction for a period of one year.
In considering such fines nonsubstantial, the majority speaks from the vantage point of the upper middle class affluent citizens of California. But to a large segment of California’s population, the poor and especially the minorities who make up a great portion of that segment, that fall into the category of the less-affluent, fines of $50, $100 or $250 are substantial, and even catastrophic in many instances. To consider such penalties for criminal violations a matter of insignificant importance is simply to ignore reality and to be immune to the financial conditions of a large segment of California residents.
In holding that the commission of a traffic offense—an infraction which does not permit of imprisonment—does not constitute the commission of a serious offense, the majority simply ignores, and is oblivious of, the *58 conditions under which a large and substantial number of our residents live and exist.
Although the majority considers fines ranging from $50 to $250 as nonsubstantial, there are millions of low-income citizens among California’s many millions to whom such fines can be catastrophically devastating in terms of the effects upon their ability to meet their obligations for the necessities of life.
Thus, the fact that the violation of a traffic law does not permit the imposition of an imprisonment sentence does not mean that a traffic violation—labelled an infraction—is not a serious offense.
An analysis of the language employed in the Vehicle Code also fortifies my view that an “infraction” is a serious offense. Consider, for example, the language of Vehicle Code section 42001, subdivision (a). It provides the penalties for infractions and speaks in terms of “. . . every person convicted of an infraction for a violation of this code . . . shall be punished upon & first conviction . . . .” (Italics added.) This is not the language of an insignificant matter. And Vehicle Code section 42003, subdivision (a), which provides for payment of fines, speaks in terms of “[a] judgment that a person convicted of an infraction be punished by a fine . . . .” (Italics added.)
I cannot accept the fact that the use of the terms—“'convicted,” “judgment” and “punishment,” in statutory provisions dealing with a criminal offense—can be converted, by fiat, as the majority does, into being considered a relatively unimportant and innocuous category of criminal offenses. In my view, the adjudication of the issue of whether a defendant, charged with an “infraction,” is to be “convicted” and shall be “punished” by a fine as a result of a judgment declaring that he has been so convicted (Veh. Code, §§ 42001, 42007), involves the exercise of full judicial power and not the performance of subordinate judicial duties.
I consider the majority’s view to be utterly untenable and unsupportable insofar as it holds that a traffic infraction is not serious solely because *59 it does not carry imprisonment as a penalty but only a fine which is denominated as lacking in substantiality.
An “infraction” is defined in Vehicle Code section 40000.1 as a violation of any provision of the Vehicle Code or of any local ordinance adopted pursuant thereto which is not otherwise designated as a misdemeanor or felony.
In reaching its holding, the majority also fails to give adequate recognition to ancillary results that are possible from a conviction of a Vehicle Code violation which is designated an infraction. Vehicle Code section 42003, subdivision (a), provides: “A judgment that a person convicted of an infraction be punished by a fine may also provide for the payment to be made within a specified time or in specified installments. A judgment granting a defendant time to pay the fine shall order that if the defendant fails to pay the fine or any installment thereof on the date that it is due he shall appear in court on that date for further proceedings. Willful violation of the order is punishable as contempt.” (Italics added.) Thus, an imprisonment sentence for contempt is a possible ancillary result from an infraction conviction.
Another possible ancillary result of an infraction conviction is that the court may order that a person guilty of an infraction shall attend a school for instruction in the operation of a motor vehicle. (Veh. Code, § 42005.) The majority fails to mention that Vehicle Code section 42005 also provides that “[a]ny person who willfully fails to comply with such order is guilty of a misdemeanor.”
It is obvious, therefore, that the issue of whether a defendant has committed a traffic violation—denominated an infraction—is a serious decisional issue for several reasons. First, the amount of the fines, as penalties imposed by Vehicle Code section 42001, involve serious consequences, considered alone. Second the fact of an infraction conviction can readily lead to the more serious consequences of an order for installment payment of fines and for appearance in court in case of a failure to pay as ordered, the violation of which becomes punishable by imprisonment as a contempt. Third, the conviction of a traffic violation as *60 an infraction may result in an order to attend a school for traffic violators, the violation of which constitutes a misdemeanor under Vehicle Code section 42005.
The ancillary effects of infraction fines that may well lead to punishment for additional offenses of misdemeanors and contempt, establish, without question, the seriousness and substantiality of infraction offenses.
Penal Code section 19c declares that an infraction is not punishable by imprisonment. It also denies to a person charged with an infraction the right to have a public defender or other counsel appointed at public expense. The majority in the case at bench concludes that section 19c supports the proposition that the adjudication of whether an infraction has been committed involves only the performance of subordinate judicial duties. But I find no such implications flowing from this section. The denial to a person charged with an infraction of the right to a jury trial and the right to free legal counsel is irrelevant to a determination of the true nature of judicial duties—whether such duties constitute the exercise of full judicial power or the performance of subordinate judicial duties.
In small claims civil litigation, a litigant is also denied the right to a jury trial and the right to even have counsel at the litigant’s own expense. Surely, the majority would not contend that the adjudication of litigants’ rights in contested civil matters not exceeding $750 is so routine in nature that it amounts to the performance of subordinate judicial duties because of the prohibition against a jury trial and representation by counsel.
The majority asserts that the adjudication of traffic offenses is unique in our legal system—relying upon statements contained in the California Municipal and Justice Courts Manual, published in 1974, by the California Center for Judicial Education and Research. The theory asserted is that trials of traffic infractions involve no complex problems of law or fact and are characterized by the pressure of high volume and the monotony of repetition. Hence, asserts the majority, in a large metropolitan court, traffic cases are assigned to the newest judges on the courts or to commissioners.
*61 But how such factors become relevant as guides to statutory or constitutional construction is not made clear. In some superior courts, because of seniority, the newer judges are assigned to criminal felony trials, which are deemed the least desirable of assignments. Certainly, this work of newer judges constitutes the exercise of “full judicial power” —not the performance of “subordinate judicial duties.” High volume and repetitious issues can play no part in deciding what constitutes the performance of subordinate judicial duties.
I see nothing unique about the adjudication of traffic offenses.
The fact that traffic infractions are by far the more numerous class of business in the municipal court is no indication that the factual issue to be adjudicated in a contested matter is simple and, hence, involves the performance of subordinate judicial duties rather than the performance of full judicial power. The issue of witness credibility between the defendant and the police officer, usually involved in an infraction case, is equally as difficult to determine by the trier of fact as is the same issue of credibility of witnesses involved in felony and misdemeanor trials.
The number of witnesses on each side of a contested issue of fact can have no logical relationship in deciding whether the trier of fact is exercising full judicial power or subordinate judicial duties. The issue of guilt or innocence in a traffic infraction trial that is based upon the credibility of a defendant as a witness and that of one police officer is just as difficult to determine as is the question of the credibility of defendant as a witness and that of one prosecution witness in a misdemeanor trial or in a felony trial. The reduction of the number of witnesses to one on each side does not change the nature of the adjudicatory task from the performance of full judicial power to the performance of subordinate judicial duties.
I agree that a traffic court may be characterized by the pressure of high volume and the monotony of repetition. But, in my view, however, these considerations have absolutely no relevancy with respect to the question of whether the adjudication by the trier of fact of the issue of whether a defendant has committed a traffic infraction comes within the concept of *62 the performance of a subordinate judicial duty. A misdemeanor court presided over by a judge may also be characterized by high volume and the monotony of repetition. Surely, however, the majority would not hold that, because of the high volume of cases and the possible monotony of these trials, a trier of fact’s adjudication of the issue of whether a defendant has committed a misdemeanor should be classified as the performance of a subordinate judicial duty, to which commissioners and referees may be assigned without the consent of the defendant.
The majority opinion sets forth the view that, although versatility and a high order of legal skills are called for in the successful performance of judicial duties involved in the adjudication of misdemeanor trials and felony preliminary examinations, the same versatility and high order of legal skills are not called for in the trials of traffic infraction cases. I reject as completely untenable and indefensible the majority’s notion that the trial of traffic-infraction cases calls for the talents of persons different from the talents of judges who preside over misdemeanor trials and preliminary examinations. Contrary to the view of the majority, there are many seasoned judges who prefer to sit in traffic court because this court, like a small claims court, represents, for many citizens, the first and only contact with the judicial system. A judge of the court, therefore, may well provide citizens with a more satisfying experience and opinion of the judicial process than that provided by a commissioner.
The majority’s position that there is something unique and specialized about the judicial function of adjudicating contested infraction cases to justify the Legislature’s determination that commissioners may be authorized to adjudicate such cases under the concept that they are performing subordinate judicial duties is without foundation in logic or any sound principles of statutoiy construction.
The desire for speedy resolution of infraction cases constitutes no justification for violating constitutional mandates. “One need not be unsympathetic to the administrative complexities of a huge metropolitan court to insist, despite the dictates of expediency, that substantive controversies between litigants be decided only by judges to whom the constitutional responsibility has been assigned. (Cal. Const., art. VI, §§ 1, *63 4, 10.) As Justice Cardozo wrote, ‘codes and statutes do not render the judge superfluous.’ (Cardozo, Nature of the Judicial Process (1921) p. 14.) Court commissioners should be permitted to perform only subordinate judicial duties. I would place repeated emphasis upon the adjective.” (Rooney v. Vermont Investment Corp. (1973) 10 Cal.3d 351, 373 [110 Cal.Rptr. 353, 515 P.2d 297] (conc. opn.).) (Italics in original.)
The majority points out that, in Rooney, the court analyzed in depth the meaning of “subordinate judicial duties.” But the Rooney decision does not sanction the majority’s interpretation of the phrase “subordinate judicial duties.” The actual holding of Rooney relates to the power of court commissioners to hear uncontested matters as authorized by Code of Civil Procedure section 259a. This section provides, in pertinent part for our purposes, that a court commissioner should have power “[t]o hear and determine ex parte motions, for orders and alternative writs and writs of habeas corpus in the superior court of the county, or city and county, for which he is appointed.” The Rooney court stated: “We accordingly hold that section 259a, subdivision 6, providing for the assignment to court commissioners of certain judicial duties with respect to uncontested matters, falls squarely within the scope of the legislative authority conferred by article VI, section 22, of the Constitution.” (Rooney, supra, 10 Cal.3d 351, 366.) (Italics added.) Any reliance upon the Rooney case beyond its actual holding is untenable and represents unreliable dicta.
The majority also places emphasis upon the fact that the Legislature has interpreted the Constitutional provision consistent with the views of the majority. It is clear that the Legislature, by setting forth certain duties which commissioners may perform, provides a legislative interpretation of what the California Constitution empowers commissioners to do. “This conclusion carries with it ‘the strong presumption in favor of the Legislature’s interpretation of a provision of the Constitution.’ ” (Rooney, supra, 10 Cal.3d 351, 366.)
But the Legislature’s interpretation of a statute is not binding upon the court in which rests the final word as to the appropriate interpretation of a statute or constitutional provision.
The majority is correct in holding that In re Edgar M. (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406], is not dispositive of the issue presented in the case at bench. But although not dispositive of the issue before us, it is persuasive against the views stated by the majority. Thus, In re Edgar M. makes clear that the Rooney decision was not intended to *64 be expanded to encompass any duties which the Legislature desired to give to commissioners as constituting subordinate judicial duties. “The powers of court commissioners under sections 259 and 259a of the Code of Civil Procedure which we held in Rooney were encompassed in the ‘subordinate judicial duties’ permitted by article VI, section 22 of the Constitution (10 Cal.3d at pp. 361-367) contain similar limitations. Unless acting as a temporary judge on stipulation of the parties litigant (Cal. Const., art. VI, § 21, Code Civ. Proc., § 259a, subd. 4; Sarracino v. Superior Court, supra, 13 Cal.3d 1, 6 [118 Cal.Rptr. 21, 529 P.2d 53]) or dealing with certain ex parte, uncontested or collateral matters (Code Civ. Proc., § 259a, subds. 1, 3, 6), the commissioner must report his findings to the court ‘for approval, rejection or change’ (Code Civ. Proc., § 259a, subd. 5) or for subjection to a hearing on exceptions (Code Civ. Proc., § 259a, subd. 2). Such contested findings reported to the court ‘are advisory only.’ [Citation.]” (In re Edgar M., supra, 14 Cal.3d 727, 735 (italics added).)
In the case at bench, the majority’s holding constitutes a prostitution of the judicial process in deciding that the distinction between the exercise of “subordinate judicial duties” and the exercise of “full judicial power” can be made dependent on legislative terminology such as a traffic “infraction” as contrasted with a “misdemeanor,” “felony” or “preliminary examination.”
It is my view that the Legislature had no valid reason to conclude that there was anything unique or special about the judicial function of adjudicating contested infraction cases that makes this judicial function the performance of “subordinate judicial duties” as contrasted with the judicial function of adjudicating contested misdemeanors, preliminary hearings and civil cases that fall within the jurisdiction of the municipal court and constitute the performance of “full judicial power.”
I would reverse each judgment of conviction.
On July 21, 1978, the opinion was modified to read as printed above.