[No. B047535. Second Dist., Div. Four. Jan. 30, 1991.].

In re LARISSA W., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Plaintiff and Appellant, v.
HEATHER W. et al., Defendants and Respondents.

**COUNSEL**

De Witt W. Clinton, County Counsel, Sterling Honea and Joe Ben Hudgens, Deputy County Counsel, for Plaintiff and Appellant.

Christopher Blake, under appointment by the Court of Appeal, for Defendants and Respondents.

**OPINION**

**EPSTEIN, J.**—In this juvenile dependency proceeding (Wel. & Inst. Code, § 300)[1], the Los Angeles County Department of Children's Services (County) appeals "from the November 27, 1989 order dismissing the Matter of Larissa W. (No. JD 50605) and from the November 28, 1989 denial of the application for rehearing of said matter." Because the Matter of Larissa W. (No. JD50605) was actually dismissed on November 28, 1989, not November 27, 1989, we construe the notice of appeal to be taken from the November 28, 1989, minute order dismissing the section 300 petition.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

We conclude that County, acting on behalf of the minor in this case, was denied its right to an adjudication by a judge or an officer exercising judicial powers following the decision of a hearing officer, who did not exercise such authority.

The County contends that the juvenile court committed prejudicial error in denying its application for a rehearing pursuant to section 252 without reading the transcript of the adjudication hearing held before a commissioner. The County also contends that the juvenile court prejudicially erred in dismissing the petition at the close of its case-in-chief because, under section 355.1, it had established a prima facie case that the minor came within the provisions of section 300.

Respondent Heather W., the minor's mother, contends that the County had no authority to seek a rehearing under section 252 and that, in any event, the application was premature. The respondent also argues that even if the County was entitled to petition for a rehearing, substantial evidence supports the juvenile court's decision to deny a rehearing, and hence that no prejudice has been suffered.

We shall reverse both orders.

## FACTUAL AND PROCEDURAL SUMMARY

On November 7, 1989, the County filed a petition alleging that Larissa W. was a minor described by section 300 in that on November 3, 1989, she was hospitalized because of a skull fracture that "would not ordinarily occur except as the result of unreasonable and/or neglectful acts or omissions by minor's mother and Elvia Battoe, baby sitter."

The adjudication hearing was held on November 27, 1989 before a commissioner, who absent a stipulation by the parties, did not exercise judicial powers. (See *In re Edgar M.* (1975) 14 Cal.3d 727, 729 [122 Cal.Rptr. 574, 537 P.2d 406] [under Cal. Const., art. VI, § 22, commissioners perform only "subordinate judicial duties" unless parties stipulate to their exercise of judicial powers].)

The minor's mother, respondent Heather W.,[2] testified that she worked in a law firm as a word processor. While she worked, she placed her daughter in the home of Elvia Battoe who had cared for Larissa since January 1989.

[2] Respondent was called as an adverse witness by the County pursuant to Evidence Code section 776.

Ms. Battoe also had cared for respondent's 15-year-old son when he was a little boy.

On October 23, 1989, respondent picked up her daughter from the baby-sitter. When she arrived at home, she noticed that the child was limping and had bruises on her hip and buttocks. Larissa was not limping and did not have any bruises when respondent dropped her off that morning. Respondent believed that her daughter sustained the injuries at the baby-sitter's home.

The following day, respondent took the minor to the pediatrician who referred her to Huntington Memorial Hospital in Pasadena. Respondent testified that the doctor attending Larissa at the hospital asked how the injuries had been sustained. Respondent did not know and therefore was unable to explain their origin, but she told the doctor that Larissa was learning to walk and attributed her injuries to falling. No one at the hospital advised respondent to take Larissa out of the baby-sitter's home or gave her any instructions that gave her concern about the baby-sitter. Respondent also related that the social worker who was present during Larissa's examination said there was no problem with a bruise. At the conclusion of the examination, respondent was permitted to take Larissa home.

Larissa's medical records of the October 24, 1989, examination indicate the presence of minor bruising to the hip and buttocks. The minor was diagnosed as having a minor bruise to her hip. The social worker's report indicates that respondent noticed her daughter's bruises after picking her up from the baby-sitter. The report further indicates that respondent was very involved in her child's care and well-being and that the child turned to her mother for comfort. The social worker's report also contained the following assessment: "Low suspicion for non accidental injury. Most likely explanation is the [patient's] developmental stage which includes recent learning to walk."

Respondent continued to take Larissa to the baby-sitter because she saw no reason not to do so. She asked the baby-sitter what had happened, but was not worried because she believed that Larissa, who often fell down, received her injuries from a fall.

On the morning of November 3, 1989, respondent was getting Larissa dressed to take her to the baby-sitter when she noticed a soft spot on Larissa's head. She immediately sought medical attention at Huntington Memorial Hospital. Respondent testified that she did not cause Larissa's injuries and that she never hit her daughter. While she did not know who hurt her child, she suspected Dora who had worked as Ms. Battoe's aide

since July or August 1989. Respondent related that her daughter did not like Dora and that respondent had asked Ms. Battoe if she knew why. Ms. Battoe had said that she did not. Respondent always used Ms. Battoe as Larissa's baby-sitter.

Medical records indicate that Larissa had sustained multiple skull fractures. Good bonding was noted between respondent and Larissa.

Dr. Mark Goodman testified as an expert in the area of child abuse. After reviewing Larissa's medical records, Dr. Goodman opined that the child fell into the battered child syndrome and that her injuries would not have occurred in the absence of some unreasonable or neglectful act by a parent or other caretaker. Dr. Goodman stated that Larissa could not have sustained her injuries by falling.

Dr. Goodman testified that child abuse escalates and that, in hindsight, he believed that there was a connection between the bruising and limping for which Larissa was examined on October 24, 1989, and the skull fractures for which she was admitted into the hospital in November 1989. He stated, however, that the medical reports of the bruising and limping "standing alone [were not] . . . significant enough to form an opinion that physical abuse was taking place." In response to a question posed by respondent's trial counsel, Dr. Goodman stated in part, "and again I'm not saying your client did it, . . ."

At the conclusion of the hearing, the commissioner found that the petition was not true as to the minor. Although the commissioner believed that the minor had been abused, he stated that the County had failed to prove by a preponderance of the evidence that the child's injuries were caused by an unreasonable or neglectful act of the mother. The commissioner granted the County's request for a 24-hour stay of his order dismissing the petition.

On November 28, 1989, the County applied for a rehearing of the adjudication proceedings heard by the commissioner pursuant to section 252. The application was denied the same day. At the time it ruled on the application, the juvenile court did not have a written transcript of the adjudication proceedings. A transcript of those proceedings was not prepared or filed until mid-December 1989.

Following the juvenile court's denial of the application for rehearing on November 27, 1989, the commissioner dismissed the section 300 petition filed on November 7, 1989. This appeal followed.

DISCUSSION

I

Before reaching the merits of the County's contentions, we dispose of the respondent's contention that the County lacks standing to apply for a rehearing and that, if it had standing, its application was premature.

In relevant part, section 252 states that "[a]t any time prior to the expiration of 10 days after service of a written copy of the order and findings of a referee, a minor or his parent or guardian may apply to the juvenile court for a rehearing." Our State Supreme Court has observed that section 252 only confers a right to apply for a rehearing "on the minor or one acting on behalf of the minor." (*In re Winnetka V.* (1980) 28 Cal.3d 587, 591 [169 Cal.Rptr. 713, 620 P.2d 163].)

There is no doubt that the deputy county counsel who applied for the rehearing was doing so on behalf of the minor. The reporter's transcript of the adjudication hearing indicates that counsel represented the County as well as the minor. (See § 318.5) A review of the application itself discloses that the applicant's relationship to the minor was listed as "Attorney."

Respondent cites no legal authority for her argument that a conflict of interest existed between the County and the minor once the referee found that the mother was not unreasonable or negligent in her care of the minor. We conclude that no conflict of interest existed, and that the section 252 application was filed on behalf of the minor.

Next, respondent argues "that there was no written order issued by the referee in this case so it appears that [the County's] request, even if in the proper form, was premature." This argument lacks merit. "[A]n application for rehearing of a juvenile court referee's determination can be made no earlier than the time that the order to which it is directed is made." (*In re Ferdinand R.* (1978) 85 Cal.App.3d 303, 307 [149 Cal.Rptr. 342] [ § 252 application seeking rehearing of a proceeding that had not yet taken place held to be premature.]) In this case, the County, on behalf of the minor, applied for a rehearing of the adjudication proceedings one day after its conclusion. The section 252 application was therefore timely.

II

Reversal of the order denying rehearing and the order dismissing the section 300 petition is required in this case.

"A juvenile court referee acting without the parties' consent may perform only 'subordinate judicial duties.' (Cal. Const., art. VI, § 22.) A juvenile court judge who reviews an application for rehearing a referee's findings must base a decision to adopt those findings on data 'sufficient for forming a judgment independent from that of the referee. Under these circumstances the referee's initial findings and orders become only advisory and their rendition constitutes no more than a subordinate judicial duty. [Citation.]' (*In re Edgar M.* [(1975)] 14 Cal.3d 727, 736.)" (*In re Damon C.* (1976) 16 Cal.3d 493, 496-497 [128 Cal.Rptr. 172, 546 P.2d 676].)[3]

Section 252 provides in relevant part: "If all of the proceedings before the referee have been taken down by an official reporter, the judge of the juvenile court may, after reading the transcript of such proceedings, grant or deny such application. If proceedings before the referee have not been taken down by an official reporter, such application shall be granted as of right."

A rehearing must be granted as a matter of right if the proceedings before the referee were not transcribed. If the proceedings were transcribed, a juvenile court judge can deny the application for rehearing only after reading the transcript of the proceedings held before the referee. When recorded proceedings before a referee have not been transcribed at the time the juvenile court rules on a section 252 application, as a practical matter, the proceedings should be treated as if they had been unreported and a rehearing should be granted. (See *In re Edgar M.*, *supra*, 14 Cal.3d 727, 737 [dealing with former § 558, the statutory predecessor to § 252].)

In this case, the adjudication proceedings held on November 27, 1989 were not transcribed until December 13, 1989, and the transcript was not filed until December 17, 1989. Because the juvenile court could not have reviewed the transcript at the time it denied the application for rehearing, it should have postponed the hearing for receipt of the transcript (see § 252, 6th sentence), or considered the adjudication proceedings as if they had not been reported and granted the rehearing.[4] We must therefore reverse the

---

[3] Respondent acknowledges that *Edgar M.* and *Damon C.* hold that a juvenile court errs when it denies a rehearing without reviewing the transcripts, or the pertinent parts of the transcripts of a proceeding before a referee. She argues, however, that those cases are distinguishable because they involve juvenile delinquency proceedings. The problem with this argument is that section 252 does not distinguish between delinquency and dependency proceedings. Indeed, both sides in this case acknowledge the applicability of that statute to a dependency case such as this.

[4] Both parties have suggested that the trial court acted as it did in obedience to a policy memorandum issued by the presiding judge of the juvenile court and the supervising judge for dependency proceedings. At the request of petitioner, and pursuant to Evidence Code sec-

order dismissing the petition and the order denying the application for rehearing. On remand, the juvenile court must enter a new order granting the section 252 application and must conduct a new adjudication hearing on the merits of the petition. (See *In re Damon C.*, *supra*, 16 Cal.3d 493, 497.)

Respondent's request that this court review the transcript of the adjudication hearing and make an independent determination of whether a rehearing of those proceedings is warranted reflects her misunderstanding of the effect of the juvenile court's error. As we have noted, we are remanding for a rehearing, not simply a reconsideration of the application.

■ For guidance of the trial court, we note that nothing in the plain language of section 355.1 prohibits the juvenile court from dismissing a section 300 petition when it finds that the allegations of the petition have not been proven by a preponderance of the evidence. Section 355.1 merely creates a presumption affecting the burden of producing evidence. Whether the County presented evidence establishing a prima facie case that Larissa was a minor described by section 300 or whether the presumption created by section 355.1 was rebutted at the adjudication hearing before the commissioner are questions that we need not, and do not, decide.

We emphasize that we do not intend by anything that we have said to indicate our view on the merits of the section 300 petition or on the propriety of the commissioner's findings. In this appeal, we reach only the procedural issues presented.

### DISPOSITION

The November 27, 1989, order denying the section 252 application for a rehearing and the November 28, 1989, order dismissing the matter of Larissa W. are reversed. The matter is remanded to the juvenile court with directions to grant the section 252 application filed by the County on behalf

---

tion 452, subdivisions (b) and (e), we have taken judicial notice of that document. It provides, in part, that in section 252 and 253 proceedings, the hearing commissioner or referee cannot grant a stay pending application for rehearing for a period longer than four hours, and that if an application for rehearing accompanied by an application for stay is presented, the judicial officer "shall rule immediately on the application for a stay, before sending the application for rehearing and the case file to the clerk's office" and that denials of stay applications are not to be reviewed by any judge. We do not address the court's policy on review of stay orders as such, but we observe that no such policy may properly be applied to deprive a party of the right (if it has such right) to an adjudication by an officer exercising judicial powers under the Constitution.

of the minor on November 28, 1989, and to conduct the adjudication hearing anew.

Woods (A. M.), P. J., and George, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 25, 1991.