82 Cal.App.3d 47 (1978)
147 Cal. Rptr. 235
THE PEOPLE, Plaintiff and Respondent,
v.
LEO ALEX LUCAS, Defendant and Appellant. THE PEOPLE, Plaintiff and Respondent,
v.
JOEL GABRELOW, Defendant and Appellant. THE PEOPLE, Plaintiff and Respondent,
v.
DONIEL ZVI KRAMER, Defendant and Appellant.
Docket No. 31889.
Court of Appeals of California, Second District, Division Four.
June 22, 1978.
*48 COUNSEL
Leo Alex Lucas, Joel Gabrelow and Doniel Zvi Kramer, in pro. per., for Defendants and Appellants.
John K. Van de Kamp, District Attorney, Donald J. Kaplan and Sterling S. Suga, Deputy District Attorneys, for Plaintiff and Respondent.
OPINION
FILES, P.J.
(1), (2) These three appeals were transferred from the Appellate Department of the Los Angeles Superior Court to this court pursuant to rule 62, California Rules of Court, for the purpose of settling an important question of law, that is, the constitutionality of Government Code section 72190, insofar as it authorizes a court commissioner to exercise the powers of a judge with respect to a traffic infraction case. We have concluded the section is a valid exercise of the power given to the Legislature by article VI, section 22 of the California Constitution.
Each of these cases arose from the issuance of a citation for a traffic infraction. In two cases the citations were for speeding (Veh. Code, § 22350) and in the other case for failure to stop at a stop sign (Veh. Code, § 22450). Each case was tried before a commissioner appointed by *49 the Beverly Hills Municipal Court. Each defendant pleaded not guilty, was tried, and found guilty by the court. Each appealed. None of the briefs on appeal raised any legally arguable ground for reversal. The appellate department, noting that the record did not show that any of these three defendants had consented to a trial before a commissioner, asked the district attorney to brief the question whether Government Code section 72190 was constitutional.
After receiving the brief of the district attorney, the appellate department filed its opinion reversing the three convictions upon the ground that the commissioner was not constitutionally empowered to try the cases.
California Constitution article VI, section 22, states: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties."
The first paragraph of Government Code section 72190 provides: "Within the jurisdiction of the court and under the direction of the judges, commissioners of municipal courts shall exercise all the powers and perform all of the duties authorized by law to be performed by commissioners of superior courts and such additional powers and duties as may be prescribed by law. At the direction of the judges, commissioners may have the same jurisdiction and exercise the same powers and duties as the judges of the court with respect to any infraction. The commissioners of municipal courts shall possess the same qualifications the law requires of a judge and shall hold office during the pleasure of the court appointing them and shall not engage in the private practice of law. They shall be ex officio deputy clerks."
The second sentence of that section was added by chapter 959 of the Statutes of 1976, effective January 1, 1977.
Section 3 of chapter 959 states: "The Legislature finds and declares that the duties which municipal court commissioners and traffic referees are authorized to perform pursuant to this act are subordinate judicial duties within the meaning of Section 22 of Article VI of the California Constitution."
Pursuant to that statute the Beverly Hills Municipal Court directed its commissioner to exercise the same powers and duties as are possessed by the judges with respect to any infraction.
*50 The constitutional question presented here requires an examination of the scope of "subordinate judicial duties" and the nature of the duties performed in the trial of traffic infraction cases.
In Rooney v. Vermont Investment Corp. (1973) 10 Cal.3d 351, 360 et seq. [110 Cal. Rptr. 353, 515 P.2d 297], the court analyzed in depth the meaning of "subordinate judicial duties," an expression which came into the California Constitution with the 1966 revision of article VI. The court said (at p. 362) "The words `subordinate judicial duties' were intended by the draftsmen as an appropriate constitutional phrase sufficiently broad to permit specific details to be later enacted or adopted by the legislative or rule-making agencies."
The opinion pointed out that the duties referred to in section 22 included the duties which commissioners had been empowered to perform prior to 1966 by sections 259 and 259a of the Code of Civil Procedure. Many of the functions listed in those sections have to do with ex parte and uncontested matters. Commissioners are authorized to take testimony and make reports in contested matters, subject to review by a judge upon the request of a party. (Code Civ. Proc., §§ 259, subd. 2; 259a, subds. 2, 5.) But in the hearing of some of the uncontested matters, a commissioner may be required to decide significant issues of law and make findings of fact which have the same import and finality as though made by a judge. For example, in default hearings, the court is required to receive evidence, determine the facts established by the evidence, and apply the law to these facts notwithstanding that the defendant has failed to answer. (Code Civ. Proc., § 585.)
The Rooney case expressly held "... that section 259a, subdivision 6, providing for assignment to court commissioners of certain judicial duties with respect to uncontested matters, falls squarely within the scope of the legislative authority conferred by article VI, section 22...." (10 Cal.3d at p. 366.)
An illustration of the importance and complexity of the matters which a commissioner may lawfully decide is found in West v. U.L.C. Corp. (1965) 232 Cal. App.2d 85 [42 Cal. Rptr. 603]. There the Court of Appeal upheld the power of a commissioner sitting in a default case under Code of Civil Procedure section 259a, subdivision 6, to reform a note and enjoin the foreclosure of the trust deed which secured the note.
The Rooney opinion, after referring to the pre-1966 powers of commissioners under Code of Civil Procedure sections 259 and 259a, said *51 (at p. 365): "Legislation enacted after the constitutional amendment became effective reflects a legislative judgment that the new provision authorized the continued assignment to court commissioners of judicial duties at the same or comparable levels of responsibility."
Traffic infractions comprise the least serious of the offenses defined in the Vehicle Code. Other offenses, for which the offender may suffer imprisonment, suspension of the driving privilege, or a substantial fine, are classified as felonies or misdemeanors. (See Veh. Code, §§ 40000.1, 42000, 42001, 42002.) The punishment for an infraction is limited to a fine not exceeding $50 for the first offense, $100 for the second and $250 for the third offense within a year. (Veh. Code, § 42001.) The court may also order a person guilty of an infraction to attend a school for instruction in the operation of a motor vehicle. (Veh. Code, § 42005.)
Penal Code section 19c provides that a person charged with an infraction is not entitled to a jury trial, and is ordinarily not entitled to have the public defender or other counsel appointed at public expense to defend him.
The adjudication of traffic offenses is unique in our legal system.[1] One characteristic is that traffic infractions are by far the most numerous class of business in the municipal courts.[2]
*52 Traffic experts and the public agree that traffic law enforcement is "criminal" only in a limited procedural sense. The public and the legal system recognize that unsafe driving is a serious social problem, and the role of law enforcement is to promote traffic safety and improve driver behavior. For the most part, trials of traffic infractions involve no complex problems of law or fact.[3] Attorneys rarely appear in infraction cases for the simple reason that the stakes are not worth the cost. For a judge who has no special interest in the subject, traffic court is characterized by the pressure of high volume and the monotony of repetition.[4] In a large metropolitan court, where judicial assignments are influenced by seniority, traffic cases are assigned to the newest judges on the court, or to commissioners.
In some jurisdictions traffic infractions have been removed from the judicial branch and handled by administrative hearing officers attached to the executive agency which issues operator's licenses. In 1975 the California Legislature requested the California Department of Motor Vehicles to undertake a study to determine the feasibility of adjudicating minor traffic cases administratively in this state. (Sen. Con. Res. No. 40, Stats. 1975, Res. ch. 86.) The department did conduct such a study and in April 1976 published its report which concluded, among other things, that administrative adjudication by legally trained hearing officers "would stabilize and enhance the quality and efficiency of infraction processing and adjudication." (1 Cal. Dept. of Motor Vehicles: Administrative Adjudication of Traffic Offenses in Cal. p. 21.)
To avoid a conflict with the separation of powers requirement of the California Constitution, the report contemplated that the decisions of the *53 administrative hearing officers would be subject to judicial review in the superior court through a proceeding in mandamus under Code of Civil Procedure, section 1094.5. (Id., p. 142.) As a practical matter, such a review would be unavailable to most individuals who were aggrieved by an administrative decision. Mandate proceedings in the superior court (unlike traffic trials) are relatively complex and expensive, and are rarely attempted without the assistance of an attorney. Many persons would be unable and most would be unwilling to incur the expense of that kind of litigation to escape the administratively imposed sanction. Thus for all practical purposes, administrative adjudication would mean a final decision by a person who was not a judicial officer at all.
The California Legislature thus far has kept traffic adjudication within the judicial branch but with expanded use of subordinate judicial officers. The 1970 legislation on this subject was discussed by the Supreme Court in the Rooney opinion as follows: "In 1970, the Legislature enacted Government Code section 72190.1 authorizing municipal court commissioners to conduct arraignments if directed to perform such duties by the presiding or sole judge of the court. The same Legislature provided for the appointment by municipal courts of traffic referees with powers, at the direction of the court, to conduct arraignments, take pleas, grant continuances, and set cases for trial with respect to any misdemeanor violation of the Vehicle Code, and to impose fines or order attendance at traffic school when there has been a plea of guilty or nolo contendere to certain minor traffic violations.... The Legislature thus must be deemed to have concluded that the constitutional provision empowered it not only to authorize the appointment of traffic referees but to specify as subordinate judicial duties the hearing and determination of particular preliminary or uncontested matters that traffic referees and commissioners could be assigned to perform. This conclusion carries with it `the strong presumption in favor of the Legislature's interpretation of a provision of the Constitution.' [Citation.]" (10 Cal.3d at pp. 365-366.)
The 1972 Legislature authorized the appointment of traffic trial commissioners and supporting staff for the purpose of testing the feasibility of using subordinate judicial officers for the adjudication of traffic cases. (Stats. 1972, ch. 57.) That project resulted in a study and report by the Judicial Council which recommended, among other things, that the Government Code be amended to permit a commissioner or referee, when authorized by the court, to have the powers of a judge in traffic infraction matters. The 1976 Legislature responded by amending into section 72190 the language which is the subject of the present *54 appeals, and adding the same language in section 72401 with respect to traffic referees.
The 1976 statute, reflecting the Legislature's interpretation of section 22 of article VI of the state Constitution, is entitled to the same strong presumption of constitutionality as the 1970 legislation.
Webster's Third New International Dictionary defines "subordinate" as "placed in a lower order, class or rank; holding a lower or inferior position...."
In its literal sense, the word "subordinate" is a relative term. In classifying the trial of infractions as a subordinate judicial duty, the Legislature was entitled to consider that the municipal courts are required to handle a broad spectrum of cases, many of which raise complex and sensitive factual and legal issues. Criminal matters include felony preliminary examinations and misdemeanor trials, both of which often raise constitutional issues. Civil jurisdiction includes controversies over amounts up to $5,000; and the court is authorized to issue injunctions, appoint receivers, and exercise certain equity jurisdiction. (Code Civ. Proc., § 86.) Over the years this civil jurisdiction has expanded, both as to subject matter and dollar amount. Commencing July 1, 1979, the jurisdictional limit will go up to $15,000. (Stats. 1978, ch. 146, No. 2 Deering's Adv. Legis. Service, p. 434.) Versatility and the highest order of legal skill are called for in the successful performance of many of these judicial duties. By way of contrast, the trial of traffic infraction cases calls for the talents of a person who understands the special societal function of traffic law enforcement, who is committed to its educational objective and who has the personal capability of dealing with people expeditiously, fairly, and in good spirit. The Legislature had valid reasons to conclude that the unique and specialized function of trying infraction cases was something which constituted a separate class of judicial service, which could properly be ranked as "subordinate" in relation to the diversity and complexity of the other duties of a municipal court judge.
One other consequence of traffic adjudication which is sometimes mentioned as enhancing the importance of such cases is that an insurance carrier may increase premium rates or refuse coverage for a driver *55 because of his record of traffic convictions. Since such a consequence depends upon the exercise of business judgment by private institutions, its impact is difficult for a court to evaluate. Regardless of what the collateral consequences of a traffic conviction may be, our concern should focus upon the accuracy of the adjudicatory system in determining which persons charged with violations are in fact violators. In the context of our present inquiry, the crucial question is whether the conviction of the innocent is more likely to occur in an infraction trial before a commissioner than before a judge. Nothing which has been brought to this court's attention offers any basis for answering that question in the affirmative. On the contrary, there is good reason for the Legislature to have taken the view that a trial before a commissioner who had been designated especially to hear traffic cases would be at least as reliable as a trial before a municipal court judge whose interests and qualifications extended to a broader range of subjects. We must conclude that the possibility of increased insurance costs for convicted traffic offenders is not a factor which should weigh against the Legislature's finding that the trial of traffic infractions may properly be conducted by commissioners.
The appellate department of the superior court reached its decision in these cases with the statement that In re Edgar M. (1975) 14 Cal.3d 727 [122 Cal. Rptr. 574, 537 P.2d 406] "is dispositive." We therefore point out the vast difference we see between the issue here and that which was decided in the cited case.
Edgar M. deals with the role of a juvenile court referee who serves as a subordinate judicial officer in juvenile court cases. The Juvenile Court Law authorizes trials to be held before a referee, but subject to review by a judge. Former Welfare and Institutions Code section 558 (now § 252) provides that a judge may, after reading the transcript of the referee's hearing, grant or deny an application for a rehearing. Rehearings, if granted, must be heard by a judge, and conducted de novo. (Former Welf. & Inst. Code, § 560, now § 254.)
Former section 558 also contains language added by a 1963 amendment requiring that the judge act upon the petition for rehearing within a specified time, and provides further that if the judge fails to act within the specified time limit, the application "shall be deemed denied." The Edgar M. opinion held this last provision unconstitutional. The court reasoned *56 that giving finality to the referee's decision without review and affirmation by a judge would, in effect, give to the referee judicial power not authorized by article VI, section 22, or any other provision of the state Constitution.
The difference between Edgar M. and this case is the difference between juvenile court and infraction trials. The juvenile court, exercising jurisdiction under Welfare and Institutions Code section 602, decides matters of grave importance to the minor, his family, and the community. The adjudication hearing determines whether a minor has committed the offense charged, and, if the charge is sustained, the minor becomes a ward of the court. The disposition order may take the minor from the custody of his parents and place him in a foster home or in an institution. The legal and factual issues to be resolved in these hearings include many of the serious and complex problems faced in felony trials. The exercise of the ultimate responsibility for such decisions could never be classified as a subordinate judicial duty.
The decision that a referee may not exercise the powers of a judge in a juvenile court case affords no analogy to adult traffic infraction trials.
We conclude that the Legislature did not exceed its powers in enacting the 1976 amendment to Government Code section 72190.
Each of the judgments is affirmed.
Kingsley, J., concurred.
JEFFERSON (Bernard), J.
I dissent.
The majority upholds as constitutional and not a violation of article VI, section 22 of the California Constitution that portion of Government *57 Code section 72190 which provides: "At the direction of the judges, commissioners may have the same jurisdiction and exercise the same powers and duties as the judges of the court with respect to any infraction." I disagree. It is my view that section 72190 of the Government Code is unconstitutional insofar as it authorizes a commissioner to adjudicate "infraction" cases. It violates article VI, section 22 of the California Constitution which limits the Legislature's power to authorize the appointment of commissioners and referees for the performance of "subordinate judicial duties." I consider the adjudication of "infraction" cases as involving the exercise of full judicial power and not the exercise of subordinate judicial duties.
The majority advances a number of reasons for its holding. I find all of these reasons to be totally lacking in support in either logic, experience, or authority.
The majority considers it significant that traffic infractions comprise the least serious of the offenses defined in the Vehicle Code on the theory that infractions do not result in imprisonment, substantial fines, or suspension of driving privileges. Thus, the majority indicates that under Vehicle Code section 42001, the punishment for infractions is limited to fines not exceeding $50 for a first conviction, not exceeding $100 for a second conviction within a period of one year, and not exceeding $250 for a third or any subsequent conviction for a period of one year.
In considering such fines nonsubstantial, the majority speaks from the vantage point of the upper middle class affluent citizens of California. But to a large segment of California's population, the poor and especially the minorities who make up a great portion of that segment, that fall into the category of the less-affluent, fines of $50, $100 or $250 are substantial, and even catastrophic in many instances. To consider such penalties for criminal violations a matter of insignificant importance is simply to ignore reality and to be immune to the financial conditions of a large segment of California residents.
In holding that the commission of a traffic offense  an infraction which does not permit of imprisonment  does not constitute the commission of a serious offense, the majority simply ignores, and is oblivious of, the *58 conditions under which a large and substantial number of our residents live and exist.
Although the majority considers fines ranging from $50 to $250 as nonsubstantial, there are millions of low-income citizens among California's many millions to whom such fines can be catastrophically devastating in terms of the effects upon their ability to meet their obligations for the necessities of life.
Thus, the fact that the violation of a traffic law does not permit the imposition of an imprisonment sentence does not mean that a traffic violation  labelled an infraction  is not a serious offense.
An analysis of the language employed in the Vehicle Code also fortifies my view that an "infraction" is a serious offense. Consider, for example, the language of Vehicle Code section 42001, subdivision (a). It provides the penalties for infractions and speaks in terms of "... every person convicted of an infraction for a violation of this code ... shall be punished upon a first conviction. ..." (Italics added.) This is not the language of an insignificant matter. And Vehicle Code section 42003, subdivision (a), which provides for payment of fines, speaks in terms of "[a] judgment that a person convicted of an infraction be punished by a fine...." (Italics added.)
I cannot accept the fact that the use of the terms  "convicted," "judgment" and "punishment," in statutory provisions dealing with a criminal offense  can be converted, by fiat, as the majority does, into being considered a relatively unimportant and innocuous category of criminal offenses. In my view, the adjudication of the issue of whether a defendant, charged with an "infraction," is to be "convicted" and shall be "punished" by a fine as a result of a judgment declaring that he has been so convicted (Veh. Code, §§ 42001, 42007), involves the exercise of full judicial power and not the performance of subordinate judicial duties.
I consider the majority's view to be utterly untenable and unsupportable insofar as it holds that a traffic infraction is not serious solely because *59 it does not carry imprisonment as a penalty but only a fine which is denominated as lacking in substantiality.
An "infraction" is defined in Vehicle Code section 40000.1 as a violation of any provision of the Vehicle Code or of any local ordinance adopted pursuant thereto which is not otherwise designated as a misdemeanor or felony.
In reaching its holding, the majority also fails to give adequate recognition to ancillary results that are possible from a conviction of a Vehicle Code violation which is designated an infraction. Vehicle Code section 42003, subdivision (a), provides: "A judgment that a person convicted of an infraction be punished by a fine may also provide for the payment to be made within a specified time or in specified installments. A judgment granting a defendant time to pay the fine shall order that if the defendant fails to pay the fine or any installment thereof on the date that it is due he shall appear in court on that date for further proceedings. Willful violation of the order is punishable as contempt." (Italics added.) Thus, an imprisonment sentence for contempt is a possible ancillary result from an infraction conviction.
Another possible ancillary result of an infraction conviction is that the court may order that a person guilty of an infraction shall attend a school for instruction in the operation of a motor vehicle. (Veh. Code, § 42005.) The majority fails to mention that Vehicle Code section 42005 also provides that "[a]ny person who willfully fails to comply with such order is guilty of a misdemeanor."
It is obvious, therefore, that the issue of whether a defendant has committed a traffic violation  denominated an infraction  is a serious decisional issue for several reasons. First, the amount of the fines, as penalties imposed by Vehicle Code section 42001, involve serious consequences, considered alone. Second, the fact of an infraction conviction can readily lead to the more serious consequences of an order for installment payment of fines and for appearance in court in case of a failure to pay as ordered, the violation of which becomes punishable by imprisonment as a contempt. Third, the conviction of a traffic violation as *60 an infraction may result in an order to attend a school for traffic violators, the violation of which constitutes a misdemeanor under Vehicle Code section 42005.
The ancillary effects of infraction fines that may well lead to punishment for additional offenses of misdemeanors and contempt, establish, without question, the seriousness and substantiality of infraction offenses.
Penal Code section 19c declares that an infraction is not punishable by imprisonment. It also denies to a person charged with an infraction the right to have a public defender or other counsel appointed at public expense. The majority in the case at bench concludes that section 19c supports the proposition that the adjudication of whether an infraction has been committed involves only the performance of subordinate judicial duties. But I find no such implications flowing from this section. The denial to a person charged with an infraction of the right to a jury trial and the right to free legal counsel is irrelevant to a determination of the true nature of judicial duties  whether such duties constitute the exercise of full judicial power or the performance of subordinate judicial duties.
In small claims civil litigation, a litigant is also denied the right to a jury trial and the right to even have counsel at the litigant's own expense. Surely, the majority would not contend that the adjudication of litigants' rights in contested civil matters not exceeding $750 is so routine in nature that it amounts to the performance of subordinate judicial duties because of the prohibition against a jury trial and representation by counsel.
The majority asserts that the adjudication of traffic offenses is unique in our legal system  relying upon statements contained in the California Municipal and Justice Courts Manual, published in 1974, by the California Center for Judicial Education and Research. The theory asserted is that trials of traffic infractions involve no complex problems of law or fact and are characterized by the pressure of high volume and the monotony of repetition. Hence, asserts the majority, in a large metropolitan court, traffic cases are assigned to the newest judges on the courts or to commissioners.
*61 But how such factors become relevant as guides to statutory or constitutional construction is not made clear. In some superior courts, because of seniority, the newer judges are assigned to criminal felony trials, which are deemed the least desirable of assignments. Certainly, this work of newer judges constitutes the exercise of "full judicial power"  not the performance of "subordinate judicial duties." High volume and repetitious issues can play no part in deciding what constitutes the performance of subordinate judicial duties.
I see nothing unique about the adjudication of traffic offenses.
The fact that traffic infractions are by far the more numerous class of business in the municipal court is no indication that the factual issue to be adjudicated in a contested matter is simple and, hence, involves the performance of subordinate judicial duties rather than the performance of full judicial power. The issue of witness credibility between the defendant and the police officer, usually involved in an infraction case, is equally as difficult to determine by the trier of fact as is the same issue of credibility of witnesses involved in felony and misdemeanor trials.
The number of witnesses on each side of a contested issue of fact can have no logical relationship in deciding whether the trier of fact is exercising full judicial power or subordinate judicial duties. The issue of guilt or innocence in a traffic infraction trial that is based upon the credibility of a defendant as a witness and that of one police officer is just as difficult to determine as is the question of the credibility of defendant as a witness and that of one prosecution witness in a misdemeanor trial or in a felony trial. The reduction of the number of witnesses to one on each side does not change the nature of the adjudicatory task from the performance of full judicial power to the performance of subordinate judicial duties.
I agree that a traffic court may be characterized by the pressure of high volume and the monotony of repetition. But, in my view, however, these considerations have absolutely no relevancy with respect to the question of whether the adjudication by the trier of fact of the issue of whether a defendant has committed a traffic infraction comes within the concept of *62 the performance of a subordinate judicial duty. A misdemeanor court presided over by a judge may also be characterized by high volume and the monotony of repetition. Surely, however, the majority would not hold that, because of the high volume of cases and the possible monotony of these trials, a trier of fact's adjudication of the issue of whether a defendant has committed a misdemeanor should be classified as the performance of a subordinate judicial duty, to which commissioners and referees may be assigned without the consent of the defendant.
The majority opinion sets forth the view that, although versatility and a high order of legal skills are called for in the successful performance of judicial duties involved in the adjudication of misdemeanor trials and felony preliminary examinations, the same versatility and high order of legal skills are not called for in the trials of traffic infraction cases. I reject as completely untenable and indefensible the majority's notion that the trial of traffic-infraction cases calls for the talents of persons different from the talents of judges who preside over misdemeanor trials and preliminary examinations. Contrary to the view of the majority, there are many seasoned judges who prefer to sit in traffic court because this court, like a small claims court, represents, for many citizens, the first and only contact with the judicial system. A judge of the court, therefore, may well provide citizens with a more satisfying experience and opinion of the judicial process than that provided by a commissioner.
The majority's position that there is something unique and specialized about the judicial function of adjudicating contested infraction cases to justify the Legislature's determination that commissioners may be authorized to adjudicate such cases under the concept that they are performing subordinate judicial duties is without foundation in logic or any sound principles of statutory construction.
The desire for speedy resolution of infraction cases constitutes no justification for violating constitutional mandates. "One need not be unsympathetic to the administrative complexities of a huge metropolitan court to insist, despite the dictates of expediency, that substantive controversies between litigants be decided only by judges to whom the constitutional responsibility has been assigned. (Cal. Const., art. VI, §§ 1, *63 4, 10.) As Justice Cardozo wrote, `codes and statutes do not render the judge superfluous.' (Cardozo, Nature of the Judicial Process (1921) p. 14.) Court commissioners should be permitted to perform only subordinate judicial duties. I would place repeated emphasis upon the adjective." (Rooney v. Vermont Investment Corp. (1973) 10 Cal.3d 351, 373 [110 Cal. Rptr. 353, 515 P.2d 297] (conc. opn.).) (Italics in original.)
The majority points out that, in Rooney, the court analyzed in depth the meaning of "subordinate judicial duties." But the Rooney decision does not sanction the majority's interpretation of the phrase "subordinate judicial duties." The actual holding of Rooney relates to the power of court commissioners to hear uncontested matters as authorized by Code of Civil Procedure section 259a. This section provides, in pertinent part for our purposes, that a court commissioner should have power "[t]o hear and determine ex parte motions, for orders and alternative writs and writs of habeas corpus in the superior court of the county, or city and county, for which he is appointed." The Rooney court stated: "We accordingly hold that section 259a, subdivision 6, providing for the assignment to court commissioners of certain judicial duties with respect to uncontested matters, falls squarely within the scope of the legislative authority conferred by article VI, section 22, of the Constitution." (Rooney, supra, 10 Cal.3d 351, 366.) (Italics added.) Any reliance upon the Rooney case beyond its actual holding is untenable and represents unreliable dicta.
The majority also places emphasis upon the fact that the Legislature has interpreted the Constitutional provision consistent with the views of the majority. It is clear that the Legislature, by setting forth certain duties which commissioners may perform, provides a legislative interpretation of what the California Constitution empowers commissioners to do. "This conclusion carries with it `the strong presumption in favor of the Legislature's interpretation of a provision of the Constitution.'" (Rooney, supra, 10 Cal.3d 351, 366.)
But the Legislature's interpretation of a statute is not binding upon the court in which rests the final word as to the appropriate interpretation of a statute or constitutional provision.
The majority is correct in holding that In re Edgar M. (1975) 14 Cal.3d 727 [122 Cal. Rptr. 574, 537 P.2d 406], is not dispositive of the issue presented in the case at bench. But although not dispositive of the issue before us, it is persuasive against the views stated by the majority. Thus, In re Edgar M. makes clear that the Rooney decision was not intended to *64 be expanded to encompass any duties which the Legislature desired to give to commissioners as constituting subordinate judicial duties. "The powers of court commissioners under sections 259 and 259a of the Code of Civil Procedure which we held in Rooney were encompassed in the `subordinate judicial duties' permitted by article VI, section 22 of the Constitution (10 Cal.3d at pp. 361-367) contain similar limitations. Unless acting as a temporary judge on stipulation of the parties litigant (Cal. Const., art. VI, § 21, Code Civ. Proc., § 259a, subd. 4; Sarracino v. Superior Court, supra, 13 Cal.3d 1, 6 [118 Cal. Rptr. 21, 529 P.2d 53]) or dealing with certain ex parte, uncontested or collateral matters (Code Civ. Proc., § 259a, subds. 1, 3, 6), the commissioner must report his findings to the court `for approval, rejection or change' (Code Civ. Proc., § 259a, subd. 5) or for subjection to a hearing on exceptions (Code Civ. Proc., § 259a, subd. 2). Such contested findings reported to the court `are advisory only.' [Citation.]" (In re Edgar M., supra, 14 Cal.3d 727, 735 (italics added).)
In the case at bench, the majority's holding constitutes a prostitution of the judicial process in deciding that the distinction between the exercise of "subordinate judicial duties" and the exercise of "full judicial power" can be made dependent on legislative terminology such as a traffic "infraction" as contrasted with a "misdemeanor," "felony" or "preliminary examination."
It is my view that the Legislature had no valid reason to conclude that there was anything unique or special about the judicial function of adjudicating contested infraction cases that makes this judicial function the performance of "subordinate judicial duties" as contrasted with the judicial function of adjudicating contested misdemeanors, preliminary hearings and civil cases that fall within the jurisdiction of the municipal court and constitute the performance of "full judicial power."
I would reverse each judgment of conviction.
On July 21, 1978, the opinion was modified to read as printed above.
NOTES
[1] The California Municipal and Justice Courts Manual, published by the California Center for Judicial Education and Research (1974) contains this overview of traffic court procedure:

"I. [§ 14.1] Traffic Procedure Distinguished
"It has long been recognized that, although traffic violations are classified as criminal offenses, they call for a different approach in processing from that in other criminal cases. The earliest comprehensive study of traffic court procedures throughout the United States noted the following distinctions from other criminal matters:
"(1) Usually a single issue is involved without question of degree or technicality;
"(2) The judge is given no extraneous or impartial testimony to aid his decision, particularly in nonaccident cases, but must decide whether the defendant's story raises a reasonable doubt;
"(3) Although the traffic violator is technically a criminal, one accused of a minor violation will not respond to the treatment usually given lawbreakers in other fields;
"(4) Except for some accident cases, long and complicated trials are not required, and much more rapid adjudication of cases is possible than in any other criminal field;
"(5) Traffic law enforcement calls for uniform treatment over large geographic areas, and traffic courts must cooperate with the state motor vehicle administration to achieve uniform procedures and to make vital information readily available to that department. See Warren, Traffic Courts 33-34 (1944).
".... .... .... .... .... ."
[2] The statewide figures for the fiscal year 1976-1977 as reported in the January 1, 1978, Annual Report of the Judicial Council of California are:

 Type of case Filings Contests
Nonparking traffic infractions 4,356,682 73,882
Parking infractions 8,763,280 3,487
Traffic Misdemeanors 450,464 9,256
Nontraffic misdemeanors and infractions 583,708 10,964

[3] In In re Dennis B. (1976) 18 Cal.3d 687, 695 [135 Cal. Rptr. 82, 557 P.2d 514], the Supreme Court had before it the question whether a conviction of an infraction operated as jeopardy barring prosecution for a felony arising out of the same prohibited act. The court's opinion referred to "the state's substantial interest in maintaining the summary nature of minor motor vehicle violation proceedings," and said "Unconstrained by the more stringent procedural requirements of a major criminal trial, municipal courts and prosecutors are free to develop innovative procedures to expedite traffic cases."
[4] See discussion in Final Report of the Ad Hoc Task Force on Adjudication of the National Highway Safety Advisory Committee (June, 1973), attached as exhibit A to 2 California Department of Motor Vehicles: Administrative Adjudication of Traffic Offenses in California.